287 F.2d 873
 Felix CLAUSS, Jr., Thomas R. Clauss and Anna M. Clauss, t/a Felix Clauss and Sons, Appellants,
v.
AMERICAN INSURANCE COMPANY and
Paul Rumer and City of Philadelphia.
 No. 13332.
 United States Court of Appeals Third Circuit.
 Argued December 12, 1960.
 Decided March 8, 1961.
 Rehearing Denied March 30, 1961.
 
 Henry J. Morgan, Philadelphia, Pa. (Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., on the brief), for appellants.
 Milford J. Meyer, Philadelphia, Pa. (Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., on the brief), for Paul Rumer. Thomas Raeburn White, Jr., Philadelphia, Pa. (Jan E. DuBois, White & Williams, Philadelphia, Pa., on the brief), for American Ins. Co.
 Before KALODNER, STALEY and HASTIE, Circuit Judges.
 HASTIE, Circuit Judge.
 
 
 1
 Underlying this controversy concerning the coverage of two liability insurance policies is an accident which occurred when a truck driven by Paul Rumer swerved and hit a tree bordering Roosevelt Boulevard in the City of Philadelphia. In an ordinary action for negligent injury against the City of Philadelphia in the Court of Common Pleas, Rumer alleged that a defect in the public roadway had caused the swerving of his truck. The City then brought Clauss and Sons, a partnership engaged in sewer construction, into the action as a third-party defendant, alleging that its improper performance of certain work under a contract with the City had caused the defective condition of the roadway about which Rumer complained. Rumer has also filed in the Court of Common Pleas a separate action against Clauss and Sons directly, alleging that he is a thirdparty beneficiary suing on a promise by Clauss in its construction contract with the City to reimburse any person injured as a result of its performance of that contract.
 
 
 2
 The American Insurance Co. had issued two policies of liability insurance to Clauss and Sons. Accordingly, Clauss and Sons promptly notified American of these suits, but the insurer subsequently denied coverage and declined to defend the actions. Clauss then brought the present action, a diversity suit, in the District Court for the Eastern District of Pennsylvania to determine by declaratory judgment whether the several claims asserted against it in the Court of Common Pleas were within the risks American had insured and agreed to defend.
 
 
 3
 Because two suits against Clauss and two liability insurance policies are involved, four distinct claims of coverage have been asserted in the present suit. First, the third-party claim against Clauss in the original tort action is said to assert a liability covered by the first policy. Second, the same risk is said to be insured under the second policy. Next, Rumer's direct claim against Clauss in the third-party-beneficiary contract action is said to be covered by the first policy. Finally, this contractual claim is said to be covered by the second policy. Disposing of these several claims of insurance coverage, the District Court held that American was under no liability except that it must defend the tort action until it shall become apparent in that litigation that the matter in dispute is not within the coverage of the second policy. The part of the adjudication requiring such a defense was interlocutory in that the District Court retained jurisdiction for possible subsequent adjudication on this matter, depending upon the course of the litigation in the state court. The other claims of coverage were rejected in separate holdings which the court below integrated as paragraphs of a single declaratory judgment. Moreover, in its order the court recited that there was no just reason for delay in entering final judgment and, accordingly, designated all parts of its judgment, except the above described interlocutory ruling, as final. Appeal has now been taken from this final judgment, treating the litigation as involving multiple claims, all but one of which have been finally adjudicated in the manner prescribed by Rule 54(b), Federal Rules of Civil Procedure, 28 U.S.C.
 
 
 4
 The two insurance policies, each entitled "Comprehensive Liability Policy", are alike in most of their provisions. The first, however, was issued in October 1956 and recites that the policy period is November 1, 1956 to November 1, 1957. The second was issued about a year later with a stated policy period of November 1, 1957 to November 1, 1958. Rumer's accident occurred February 1, 1958. Each policy provides in its general terms of agreement that "this policy * * * applies only to accidents or occurrences which take place during the policy period".
 
 
 5
 The court below held the first policy inapplicable to both claims based upon Rumer's injury because the accident occurred after the expiration of the policy period. Disputing that conclusion, Clauss argues that, despite the limited policy period, the first policy covered liability arising at any future time under the particular contract with the City which it was performing during the policy period. To support this conclusion Clauss argues first that the policy contains an endorsement explicitly providing coverage of contractual liability for bodily injury incurred pursuant to City contract SD-244-NE, under which Clauss performed the construction work here involved. Second, it is argued that since contract SD-244-NE by its terms makes Clauss responsible for damages which third parties may suffer as a result of the sewer job even after its completion, there is no limitation upon the time in which a liability-creating consequence of the sewer job must occur in order to be covered by this one-year policy. And finally, this alleged absence of time limitation is said to be substantiated by the fact that the policy itself recites a "flat charge" of $968.45 for coverage of this one contract.
 
 
 6
 Although the argument thus advanced by Clauss is ingenious, we think it is not sound. First of all, it denies the apparent generality of the provision of the insurance contract that "this policy applies only to accidents or occurrences which take place during the policy period". There is no need for this distortion of normal meaning. In any event, the endorsement extended coverage to the risk of contractual liability for injury suffered by a third person during the one year policy period as a result of the sewer job, whether or not the job was completed during the policy period. Only if there had been no such risk during the policy period would there be a logical basis for inferring that the general limitation of liability to accidents during that period was not intended to apply to this special contractual coverage. But this risk was just as real as the primary risk of direct tort liability for negligent injury, and apparently was intended to be coextensive in time with the latter. In this connection appellant also argues that the premium stated in the policy for this added risk, a flat charge of $968.45, in some way indicates coverage beyond the policy period. But there is no allegation or offer of proof that this "flat charge", however calculated, was an excessive premium for the risk involved during the policy period itself.
 
 
 7
 We conclude, therefore, that the court below properly ruled that the time limitation in the first policy made it inapplicable to Rumer's third-party-beneficiary contract claim despite the endorsement covering certain contractual liability. The same reasoning must make it equally clear, or clearer, that the City's third-party action, whether based on its contract or on ordinary liability in tort for negligent injury, is not covered.
 
 
 8
 The time barrier which defeats the claims under the first policy does not invalidate the claims under the second policy since, admittedly, the accident occurred within the second policy period. However, there are other difficulties in applying this policy.
 
 
 9
 We consider first the extent to which the second policy covers liability based on contract. Such coverage of contractual liability is qualified by an exclusion, which reads as follows:
 
 
 10
 "It is agreed that such insurance as is afforded by the policy with respect to liability assumed by the insured under contract applies also to each contract of the named insured of the nature herein designated, but only to the extent of the liability assumed in the undertaking herein stated.
 
 
 11
 "All written contracts between the named insured and its customers involving operations of the named insured under such contracts, provided each contract is submitted to the American Automobile Insurance Company not later than thirty days (30) after the insured has entered into the contract and the liability assumed by said contract has been approved and a rate of premium has been established by the company."
 
 
 12
 This exclusion is significant here because in this policy, unlike the first one, City contract SD-244-NE was not listed or rated. Thus, on the face of the second policy, the express exclusion of contracts not listed prevents coverage of the City contract.
 
 
 13
 To avoid this conclusion appellant argues that the listing of this City contract in the first policy, issued for a period ending November 1, 1957, somehow justifies an implication that this contract was included sub silentio in the similar policy which became effective immediately after the expiration of its predecessor. But the second policy is in itself a complete new contract. It contains no reference, certainly no incorporating reference, to provisions of the earlier policy. Moreover, the first contract recites a "flat charge" of $968.45 as an additional premium for the coverage of the specified City contract. No such additional premium is recited in the second contract. And no basis appears for implying that the aggregate premium stated in the second policy was computed in such a way as to include contractual liability under City contract SD-244-NE. We see no escape from the conclusion that the express exclusion of contracts not listed defeats the claim of contractual coverage under the second policy.
 
 
 14
 The court below reached this result, but did so on the basis of its interpretation of other provisions of the policy. We express no opinion upon that analysis or interpretation.
 
 
 15
 We have already pointed out that the ruling below on the tort claim as it relates to the second policy was interlocutory. That controversy is not before us.
 
 
 16
 The judgment will be affirmed.