[Civ. No. 41409. First Dist., Div. Three. Aug. 9, 1978.]

WAYNE R. MAPLES, Plaintiff and Respondent, v.
AETNA CASUALTY AND SURETY COMPANY,
Defendant and Appellant.

**COUNSEL**

Sedgwick, Detert, Moran & Arnold, Scott Conley and Stephen Jones for Defendant and Appellant.

David J. Crane for Plaintiff and Respondent.

**OPINION**

**WHITE, P. J.**—This is an appeal from the granting of summary judgment in favor of the plaintiff in a declaratory relief action. The action sought a declaration that the plaintiff was covered by insurance for a fire occurring after termination of the policy where the boiler installation work allegedly causing the fire occurred during the policy period. The learned trial judge, Honorable W. G. Watson, Jr., declared that there was coverage, reasoning that the plaintiff's cause and circumstances "nearly coincide" with those existing in *Sylla* v. *United States Fid. & Guar. Co.* (1976) 54 Cal.App.3d 895 [127 Cal.Rptr. 38], thereby rejecting the authority of *Remmer* v. *Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84 [295 P.2d 19, 57 A.L.R.2d 1379] and *Tijsseling* v. *General Acc. etc. Assur. Corp.* (1976) 55 Cal.App.3d 623 [127 Cal.Rptr. 681]. Declining to follow *Sylla* and accepting *Remmer* and *Tijsseling* as controlling, we will reverse the judgment. ██ We hold the view in the instant case that the terminology "accidents which occur during the policy period" is not ambiguous as used in the parties' comprehensive liability policy and further hold the phrase refers not to the time the wrongful act was committed, but the time when the complaining party was actually damaged.

On August 31, 1976, respondent Wayne Maples, doing business as Wayne Maples Plumbing (hereinafter Maples), filed a complaint for declaratory relief against appellant Aetna Casualty and Surety Company (hereinafter Aetna). The complaint alleged that Maples was insured by Aetna from August 1, 1966, to August 1, 1969; that between May 31, 1967, and August of 1967 Maples installed a gas-fired low pressure boiler for heating the residence of Dr. Robert L. Devine in Eureka; that on or about May 2, 1973, an accidental fire damaged Dr. Devine's premises, as a result of which Dr. Devine brought suit against Maples, alleging negligent installation of the boiler and that it caused the fire resulting in $51,000 damage; that Maples tendered the defense to Aetna but Aetna refused to defend or indemnify. The complaint sought a declaration that Aetna had a duty to defend and to indemnify Maples in the Devine action. Attached were the insurance documents under which Maples claimed coverage by Aetna. The following are the pertinent policy provisions:

"Coverage D—Property Damage Liability—Except Automobile.

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

" . . . . . . . . . . . . . . . . .

"II. Defense, Settlement, Supplementary Payments.

"With respect to such insurance as is afforded by this policy, the Company shall:

"(a) defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; . . .

" . . . . . . . . . . . . . . . . .

"IV. Policy Period Territory.

"This policy applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada. . . ."

On October 4, 1976, Aetna answered, denying the allegations and raising the affirmative defense that the policy covered only accidents occurring during the policy period, which expired August 1, 1969, almost four years before the fire.[1]

Maples moved for summary judgment, supporting the motion with affidavits detailing the above facts and with an affidavit by Wayne Maples stating: "That at the time I purchased the said comprehensive liability policy No. 05 ALO 47710CC obtaining coverage for operations, completed projects and contractual liability, I reasonably expected that said insurance would insure me against any negligent acts or omissions by my agents and employees during the term of said insurance, whether losses occurred during said term or thereafter."

On February 7, 1977, the court granted the motion for summary judgment. Judgment in favor of Maples was entered February 28, 1977.

> 1. Did the trial court properly find the case
> controlled by *Sylla* v. *United States Fid. & Guar.
> Co.* based upon ambiguity in the language of the
> policy and the principle that such ambiguity
> should be resolved in favor of coverage?

Stated simply, the primary issue presented to the trial court and raised on this appeal is whether the coverage by Aetna extended to injuries occurring subsequent to the policy period where the acts leading to the injuries occurred during the time when the policy was in effect. The answer is *no coverage* dictated by the general rule, well established, "that the time of the occurrence of an *accident* within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was *actually damaged.*" (*Remmer* v. *Glens Falls Indem. Co., supra,* 140 Cal.App.2d 84, 88, italics added.) However, the trial court, relying upon *Sylla* v. *United States Fid. & Guar. Co., supra,* 54 Cal.App.3d 895, concluded that coverage did extend to such injuries.

In *Sylla,* the insurance policy covering a used car dealer provided coverage for damages " 'caused by an occurrence and arising out of garage operations.' " (*Id.,* at p. 897.) The policy defined " 'garage' " as

---

[1] In answering interrogatories Maples conceded having a $50,000 policy with Allstate covering the period May 14, 1972 to May 14, 1975.

" 'an automobile sales agency repair shop, . . .' " and defined " '[o]ccurrence' " to mean " 'an accident, . . . which results, during the policy period, in bodily injury or property damage. . . .' " (*Id.,* at p. 897.) A car sold during the policy period was involved in an accident after the policy lapsed, and it was alleged that the accident was caused by a defective condition or negligence on the part of the dealer. The trial court sustained a demurrer to the insured's complaint seeking a declaration that the damages were covered by his policy with the defendant. On appeal the *Sylla* court reversed, finding that the terms " 'accident' " and " 'occurrence' " did not sufficiently explain whether protection was for future injury arising out of acts within the policy period or was only for injury occurring during the policy term. The failure to further define " 'accident' " created an uncertainty which the *Sylla* court found should be resolved in favor of coverage, reasoning that the insured "had every right to expect coverage for losses proximately resulting from his repair and sale of the automobile at a time the policy was in effect." (*Id.,* at p. 900.)

The decision in *Oil Base, Inc.* v. *Continental Cas. Co.* (1969) 271 Cal.App.2d 378 [76 Cal.Rptr. 594], was quoted extensively by the *Sylla* court to support its conclusion. Besides *Oil Base,* the *Sylla* court relied only upon its own interpretation of the insurance contract and upon the general principle, enunciated in *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269-270 [54 Cal.Rptr. 104, 419 P.2d 168], that ambiguities should be resolved in favor of the reasonable expectations of the insured.

In *Oil Base,* the question was whether a policy which, by its terms covered only " 'accidents which occur . . . within the United States of America, its territories or possessions, or Canada' " (at p. 380) applied to a fire occurring in Venezuela, allegedly caused by the negligent manufacture in Los Angeles of oil-base drilling mud which spontaneously ignited in a Venezuela warehouse. The *Oil Base* court examined cases both from California and from other jurisdictions and concluded that the word " 'accident' " as used in insurance policies, "is susceptible of several meanings" (271 Cal.App.2d 378, 387-388) and that the insurer's choice not to further define the term required application of the rule of *Gray* v. *Zurich Insurance Co., supra.*

In our view *Sylla* and *Oil Base* are in direct conflict with other California cases and with cited cases from other jurisdictions. Respondent has cited no case from California or from another jurisdiction taking the position taken by the *Sylla* and *Oil Base* courts.

The earliest discovered case in this conflicting line of authority is *Tulare Co. Power Co.* v. *Pacific S. Co.* (1919) 43 Cal.App. 315, 325 [185 P. 399]. There the question was whether the insurer would indemnify for the death of a power purchaser occurring during the policy period, but caused by contact with wires installed three months before the policy period began. The policy provision covered " 'injuries, including death therefrom, accidentally suffered, . . . during the period of this policy, . . . when such injuries or death result from accident occurring within the period hereinafter mentioned.' " (*Id.,* at p. 325.) The *Tulare* court found that the accident occurred when contact with the wires occurred, observing that it was "entirely immaterial that the installation of the wires which caused the accident occurred two months prior to the issuance of the policy." (*Id.,* at p. 325.)[2]

A similar result was reached in *Protex-A-Kar Co.* v. *Hartford Acc. etc. Co.* (1951) 102 Cal.App.2d 408 [227 P.2d 509], where antifreeze sold during the policy periods caused damages after the policies were terminated. The various policies were to apply only to " 'accidents which occur during the policy period . . . .' " (At p. 411.) Without citation to authority the court concluded that the policies were not ambiguous and that coverage applied only to damages occurring during the policy periods, rejecting the contention that the insurers should be liable for damages occurring after policy cancellation if the products had been sold during the policy periods.[3]

In *Remmer* v. *Glens Falls Indem. Co., supra,* 140 Cal.App.2d 84, the insurance policy was in effect in 1947, when the insureds graded and filled their lot, but had been cancelled four years before the slide occurred, damaging a neighbor's property. The policy applied only to " 'occurrences during the policy period'." (at p. 85), with " 'occurrence' " defined as " 'an accident, or a continuous or repeated exposure to

---

[2]The *Tulare* court (the Third District) was not deterred by the Surety Company argument that none of the payroll compensation paid by the insured prior to the issuance of the policy entered into the computation of the premium so that there was no consideration for coverage for negligence occurring prior to the issuance of the policy. The court also ruled that it was immaterial that Surety Company did not learn of the negligent installation of the wires until the decedent's widow sued the insured for the wrongful death of her husband.

[3]In *Protex-A-Kar Co.,* decided in the Third District, the policy period provision stated, " 'This policy applies only to accidents which occur during the policy period . . . .' " (P. 411.) The court recognized that the insured sought protection against damage resulting from the use of its product after it was on the market. It concluded, however, at page 413, that "the language of the policy is clear and unambiguous" and that early cancellation under the terms of the policy properly deprived him of the protection he sought.

conditions, which results in injury during the policy period, provided the injury is accidentally caused.' " (At p. 86.) Citing *Tulare County, Protex-A-Kar Co.* and several out-of-state cases, the court applied the "general rule . . . that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged." (*Id.,* at p. 88; accord *Arant* v. *Signal Ins. Co.* (1977) 67 Cal.App.3d 514, 516 [136 Cal.Rptr. 689]; *Tijsseling* v. *General Acc. etc. Assur. Corp., supra,* 55 Cal.App.3d 623, 626.)[4] It concluded that though a nuisance capable of supporting a cause of action may have been created in 1947, the damages sought by the neighbors was for present maintenance of a present nuisance, damages not covered by the cancelled policy.

A number of out-of-state cases have reached the same result, some of them citing *Tulare County, Protex-A-Kar* and/or *Remmer.* (See *Clauss* v. *American Insurance Company* (3d Cir. 1961) 287 F.2d 873, 875; *Tiedemann* v. *Nationwide Mutual Fire Insurance Co.* (1973) 164 Conn. 439 [324 A.2d 263]; *National Aviation Underwrit.* v. *Idaho Aviation Ctr.* (1970) 93 Idaho 668 [471 P.2d 55, 57]; *Century Mut. Ins. Co.* v. *Southern Arizona Aviation* (1968) 8 Ariz.App. 384 [446 P.2d 490]; *Neumann* v. *Wisconsin Natural Gas Co.* (1965) 27 Wis.2d 410 [134 N.W.2d 474, 479-480]; *Landerman* v. *United States Fidelity & Guaranty Co.* (1964) 25 Conn.Super. 297 [203 A.2d 150, 150-152]; *Commercial Contractors Corp.* v. *American Ins. Co.* (1964) 152 Conn. 31 [202 A.2d 498, 504]; *Peerless Insurance Company* v. *Clough* (1963) 105 N.H. 76 [193 A.2d 444, 446]; accord, Annot. (1956) A.L.R. 1385, 1389.) Respondent seeks to distinguish these out-of-state cases by asserting that each arose in a jurisdiction not bound to adhere to the principles of *Gray* v. *Zurich Insurance Co., supra.* But the principle that ambiguities in insurance policies will be resolved in favor of coverage is a time-honored principle, not unique to California. (See 1 Couch on Insurance (2d ed. 1959) § 15.73 et seq.) In fact, the court in *Landerman* v. *United States Fidelity & Guaranty Co., supra,* specifically mentioned the rule, and others of the out-of-state courts focused upon the fact that the term "accidents" was not ambiguous, suggesting that they were considering the applicability of the *Gray* principle.

Review of this seemingly unbroken line of authority finding that the term "accident" unambiguously refers to the event causing damage, not

---

[4] *Arant* is a unanimous decision out of the Second District, authored by Roth, P. J., with Fleming, J. and Compton, J., concurring and relying upon *Tijsseling* and *Remmer,* both First District opinions.

the earlier event creating the potential for future injury, leads to the question of how the courts in *Oil Base* and *Sylla* were able to reach results contradicting this line of authority. Neither *Oil Base* nor *Sylla* acknowledges any of the above-cited California or out-of-state authorities, which strongly suggest, that they were not briefed or argued.

The *Oil Base* court relied upon two out-of-state decisions and three California decisions in reaching its conclusion that the term "accident" was ambiguous. The two out-of-state cases were a Minnesota case decided by the Eighth Circuit (*Hagen Supply Corp.* v. *Iowa National Mutual Insurance Co.* (8th Cir. 1964) 331 F.2d 199) and a Michigan case (*Brant* v. *Citizens Mutual Automobile Insurance Co.* (1966) 4 Mich.App. 596 [145 N.W.2d 410]) reaching opposite conclusions on the question of whether the "accident" occurred when a product causing injury was sold or when the injury occurred. The *Brant* court refused to follow *Hagen*, finding that the sale of a natural gas heater to one who ordered a butane or liquid petroleum gas heater was an "accident" within the meaning of the policy just as surely as was the asphyxiation occurring when the natural gas heater was connected to butane or liquid petroleum.

The California cases cited by the *Oil Base* court were *Hyer* v. *Inter-Insurance Exchange etc.* (1926) 77 Cal.App. 343 [246 P. 1055], *Maxon* v. *Security Ins. Co.* (1963) 214 Cal.App.2d 603, 612 [29 Cal.Rptr. 586] and *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558, 563 [334 P.2d 881]. In *Hyer,* the question was whether separate collisions with two different cars in the same chain of events were two "accidents" or one "accident." The court concluded that there was but one accident for purposes of applying the insurance policy's $1,000 per "accident" liability limit. In the course of its discussion, the *Hyer* court made the following unsupported statement, quoted by the *Oil Base* court (271 Cal.App.2d at p. 387): " 'It is an "occurrence which produces hurt or injury." It also will be noticed that under this quite generally approved definition the word, as used in some classes of cases, denotes the cause of the hurt or loss; in other classes of cases it denotes the event, i.e., the unintended and unexpected loss or hurt apart from its cause; and in still other instances it may denote both the cause and the event, no attempt being made to discriminate between them. . . . But as commonly *used in liability insurance policies,* the word "accident" is predicated of an occurrence which is the *cause* of the injury. *That is to say, as used in liability insurance contracts, the word is employed to denote the cause, rather than the effect.'* Italics added.)"

*Geddes & Smith, Inc.* involved only the question of whether damages caused to a house and to the builder's business were caused by "accident" when they resulted from product defects in aluminum doors sold to the builder. The *Oil Base* court cited *Geddes & Smith, Inc.* only in connection with the following quotation of the definition of an "accident." (271 Cal.App.2d at p. 387): " 'No all-inclusive definition of the word "accident" can be given. It has been defined as " 'a casualty — something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured.' " [Citations.] It " 'includes *any event which takes place without the foresight or expectation of the person acted upon or affected by the event.*' " [Citations.] "Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause." [Citation.]' "

In *Maxon,* the court quoted from the above passages in *Hyer* and *Geddes & Smith, Inc.* It concluded that an "accident" within the meaning of a shopkeeper's insurance policy had occurred when the shopkeeper brought criminal proceedings against a customer for a bounced check. The hazard of defending a malicious prosecution action by the customer was therefore "a 'retail store hazard' " (p. 614) within the meaning of the policy. (But it was not one which the insurer would have to pay for or defend because success would require a finding that the shopkeeper acted wilfully, and an insurance policy insuring against liability for a wilful wrong is void as against public policy.)

After quoting from the above California cases, the *Oil Base* court concluded: "In the light of the quoted definitions, particularly the definition in *Hyer,* it is indisputable that the word 'accident' as used in liability insurance policies, is susceptible of several meanings. In the policy at bench, Continental [the insurer] chose not to define the word 'accident,' although the policy supplies other definitions. Uncertainty as to the intended meaning of the word 'accident' could have been clarified. . . ." (271 Cal.App.2d at pp. 387-388.)

From our examination of the cases relied upon by *Sylla* and *Oil Base,* we conclude that none was persuasive authority for the position taken by the *Sylla* and *Oil Base* courts. *Brant* was an isolated out-of-state case decided without reference to the various conflicting authorities mentioned above. The California cases cited by the *Sylla* and *Oil Base* courts

interpreted the term "accident" only for the purposes of determining whether a particular event was an "accident" at all and whether it might have been two "accidents." The *Sylla* and *Oil Base* courts failed to acknowledge a long line of cases from California and other jurisdictions finding that as between the event creating the potential for injury and the event temporally associated with the injury or damages, the latter is the "accident" for insurance policy purposes, and that the term "accident" is not ambiguous. (See also 11 Couch on Insurance (2d ed. 1963) § 44:8.)

The rule of *Oil Base* and *Sylla* is acceptable only if it can truly be said that a person buying insurance to cover "accidents" occurring during the term of the policy would reasonably conclude that the policy would apply to any damage or injury occurring in the future because of a negligent act during the policy period. The fact that there may be ambiguity in the question of whether a collision with two cars is one accident or two accidents (*Hyer*), or the question of whether malicious prosecution is an accident (*Maxon*), or whether damage done by a defective door is an accident (*Geddes*), does not mean that there is ambiguity in the question of whether the term "accident" means the negligent installation of a heater or the fire six years later attributed to the negligent installation, which is our case at bench. Accepted popular, as well as legal definition, would call the latter event the "accident."

We conclude that *Oil Base* and *Sylla* have taken a path diverging from that followed by a long line of authority. While the trial court was justified under the doctrine of *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937] in following *Sylla* along that path,[5] this court need not extend that misstep.

In view of this decision, discussion of other points raised by appellant is unnecessary.

The judgment is reversed.

Scott, J., and Feinberg, J., concurred.

---

[5]The rule of *Auto Equity Sales* declares that the rule of stare decisis has no application where there is more than one appellate court decision and such appellate decisions are in conflict. In such a situation, the court, exercising inferior jurisdiction, can and must make a choice between the conflicting decisions.