USCA1 Opinion

 

 March 29, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-2216 IN RE: SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION. _________________________ HOLDERS CAPITAL CORPORATION, ET AL., Cross-Claimants, Appellants, v. CALIFORNIA UNION INSURANCE COMPANY, ET AL., Cross-Defendants, Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Raymond L. Acosta, U.S. District Judge]. ___________________ __________________________ Before Selya and Cyr, Circuit Judges, ______________ and Fuste,* District Judge. ______________ _________________________ Gary L. Bostwick, with whom R. Lance Belsome was on brief, ________________ ________________ for appellants. Ralph W. Dau and Andrew K. Epting, Jr., with whom Peter B. ____________ _____________________ ________ Ackerman, Jeffrey W. Kilduff, O'Melveny & Myers, Raul E. ________ ____________________ ___________________ ________ Gonzalez-Diaz, A.J. Bennazar-Zequeira, Gonzalez & Bennazar, G. _____________ ______________________ ____________________ __ Trenholm Walker, Wise & Cole, Homer L. Marlow, William G. Liston, _______________ ___________ _______________ _________________ Marlow, Shofi, Connelly, Velerius, Abrams, Lowe & Adler, Paul K. ________________________________________________________ _______ Connolly, Jr., Damian R. LaPlaca, LeBoeuf, Lamb, Leiby & MacRae, _____________ _________________ _____________________________ Deborah A. Pitts, Hancock, Rothert & Bunshoft, Lon Harris, Harris ________________ ___________________________ __________ ______ & Green, Bethany K. Culp, Patrick McCoy, Oppenheimer Wolff & ________ _________________ ______________ ____________________ Donnelly, Stuart W. Axe, Lester, Schwab, Katz & Dwyer, Francisco ________ _____________ ____________________________ _________ J. Colon-Pagan, Adrian Mercado, Mercado & Soto, Marcos Perez _______________ _______________ _______________ _____________ Cruz, Virgilio Mendez Cuesta, Ernesto Rodriguez-Suris, and ____ _________________________ ________________________ Latimer, Biaggi, Rachid, Rodriguez-Suris & Godreau were on brief, __________________________________________________ for appellees. _________________________ March 29, 1993 _________________________ __________ *Of the District of Puerto Rico, sitting by designation. SELYA Circuit Judge. We approach once more the lair of SELYA Circuit Judge. _____________ the fabled "litigatory monster," In re Recticel Foam Corp., 859 __________________________ F.2d 1000, 1001 (1st Cir. 1988), spawned by the deadly fire which engulfed the San Juan Dupont Plaza Hotel on December 31, 1986. In this appeal, three entities interested in the ownership and operation of the hotel contest the district court's entry of summary judgment in favor of a group of seventeen insurers (the pre-fire insurers) whose comprehensive general liability (CGL) and excess insurance policies had expired before the fire occurred.1 Finding no error of law, we affirm. We recently traced the six-year procedural history of this gargantuan litigation, see In Re Nineteen Appeals Arising ___ _______________________________ Out of the San Juan Dupont Plaza Hotel Fire Litig., 982 F.2d 603, __________________________________________________ 605-08 (1st Cir. 1992), and it would be pleonastic to repeat that exercise. We remind the reader, however, that the district court segmented the liability inquiry into three phases. See id. at ___ ___ 606. This appeal concerns the third, and final, phase a phase designed to "determin[e] the contractual liability of various insurers." Id. at 606 n.3. ___ The district court wrote a lengthy opinion that describes the mechanics of Phase III and we refer those who thirst for greater detail to that rescript. See In Re San Juan ___ ______________ Dupont Plaza Hotel Fire Litig., 802 F. Supp. 624, 629-30 (D.P.R. _______________________________ 1992); see also id. at 652-57 (chronicling partial history of the ___ ____ ___ ____________________ 1The opinion below provides a complete list of the insurers in question. See In Re San Juan Dupont Plaza Hotel Fire Litig., ___ _____________________________________________ 802 F. Supp. 624, 628 n.3 (D.P.R. 1992). 2 insurance-related litigation). To put this appeal into workable perspective, it suffices to relate that, during Phase III, a covey of cross-claimants, comprising forty-eight entities who allegedly owned, operated, or managed the hotel, sought to recoup from the pre-fire insurers some $78,000,000 which the entities, collectively, had contributed to settlement of victims' claims. Finding an absence of coverage, the district court denied the cross-claimants' requests for indemnification. See id. at 651. ___ ___ At this juncture, forty-five cross-claimants threw in the towel. The remaining three, Holders Capital Corporation, Hotel Systems International, and Dupont Plaza Associates, were arguably made of sterner stuff. They appealed, hawking the theorem that defects in the hotel, apparent before the ustulation, gave rise to the liability upon which the settlements were based; and that, therefore, these payments reflect "property damage" of a kind covered under the insuring agreements of the policies underwritten by the pre-fire insurers.2 We believe that appellants' theorem is utterly without merit. To say that damages for bodily injury and wrongful death are really "property damage" within the ambit of carefully written insurance policies, and then to argue that coverage attaches not when the harm-producing incident occurs but when ____________________ 2Appellants chose to limit their appeal to the "property damage" theory, eschewing further pursuit of other contentions they originally espoused in the district court. Hence, we confine our comments to the single issue advanced on appeal, mindful that "theories neither briefed nor argued on appeal are deemed to have been waived." United States v. Slade, 980 F.2d _____________ _____ 27, 30 n.3 (1st Cir. 1992). 3 alleged product defects first become visible, is to construct a pyramidal proposition more reminiscent of Lewis Carroll than of the lexicon of insurance law.3 We cannot subscribe to so fanciful a reading of either the appellees' policies or the applicable precedents. And, moreover, because we find the district court's opinion on this point to be well-reasoned and clearly articulated, see id. at 643-48, we will be brief. Where, ___ ___ as here, a trial court has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquent simply to hear its own words resonate. We therefore affirm the entry of summary judgment in this case substantially on the basis of the opinion below, embellishing our affirmance with a decurtate explanation of why two recently decided cases, not considered by the district court, fail to tip the scales in appellants' favor. Relying heavily on Eljer Mfg., Inc. v. Liberty Mutual ________________ ______________ Ins. Co., 972 F.2d 805 (7th Cir. 1992), appellants argue that the ________ district court applied an incorrect rule of law. Eljer involved _____ defective plumbing systems that had been installed in homes throughout the United States. Citing policy language identical to that contained in several of the CGL policies here at issue, ____________________ 3One is reminded of Alice who, upon tumbling into the rabbit hole and finding the garden door locked, decided to solve her dilemma by eating a piece of cake. "`Well, I'll eat it,' said Alice, `and if it makes me grow larger, I can reach the key; and if it makes me grow smaller, I can creep under the door; so either way I'll get into the garden, and I don't care which happens!'" Lewis Carroll, Alice's Adventures In Wonderland 8-9 _________________________________ (Delacorte Press ed. 1966). Alice enjoyed her snack but she remained the same size and the garden door remained inviolate. See id. at 9. ___ ___ 4 the manufacturer of the systems sought a declaration that it was covered for damages flowing from leaks occurring after its policies had lapsed. A divided panel of the Seventh Circuit upheld the insured's right to coverage on the basis that the "physical injury" took place when the systems were implanted not when the leakage occurred and the latent harm materialized. Id. ___ at 814. We refuse to accord Eljer controlling weight for a _____ myriad of reasons. In the first place, the Eljer court decided _____ the coverage issue under Illinois law, see id. at 806, in part ___ ___ through the use of what it termed "first principles." Id. at ___ 812. To the extent that Eljer is good law in Illinois, a matter _____ about which Judge Cudahy disagreed, see id. at 814-17 (Cudahy, ___ ___ J., dissenting), and upon which we do not opine, we have no occasion to transplant its holding to a case, like this one, which is governed by state law requiring a different result.4 See, e.g., Albany Ins. Co. v. Compania de Desarrollo Comercial, ___ ____ ________________ _________________________________ 90 JTS 19 (P.R. 1990); Maples v. Aetna Casualty & Sur. Co., 83 ______ __________________________ Cal. App. 3d 641, 148 Cal. Rptr. 80 (1978). In the second place, insofar as Eljer purports to claim _____ nationwide application, we decline the invitation, whether ____________________ 4The district court saw no need to make a choice of law as to whether the pre-fire insurers' policies were governed by Puerto Rico or California law. See In re Hotel Fire Litig., 802 ___ _______________________ F. Supp. at 637 n.31. Because Puerto Rico law and California law coincide on the issue presented in this appeal, we, too, abjure such a choice. See Fashion House, Inc. v. K Mart Corp., 892 F.2d ___ ___________________ ____________ 1076, 1092 (1st Cir. 1989) (recognizing that a court need not make a formal choice of law when nothing would turn on it). 5 proffered by appellants or by the Eljer majority, to supplant a _____ state's body of contract law with "federal general common law." Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). _____________ ________ In the third place, Eljer's rule of law evolved in _____ connection with, and was applied to, a markedly different factual situation. The inherently defective plumbing system at issue there was installed in hundreds of thousands of homes nationwide. See Eljer, 972 F.2d at 807. It bore the risk of leaking, with a ___ _____ failure rate "sufficiently high to mark the product as defective," from the moment of installation, even when used as intended. Id. at 812. By contrast, the products found in the ___ Dupont Plaza Hotel, although alleged to have created an unreasonable danger in this particular instance, were not generally defective. They functioned properly, with no risk of _________ failure, upon normal use and became dangerous only upon the outbreak of the conflagration. Fourth, and finally, the property damage caused by the defective plumbing systems was just that property damage, e.g., ____ claims for water damage to the victims' homes, diminution in property values, loss of use, costs of replacing the systems, etc. See id. at 807. Here, however, unlike in Eljer, the ___ ___ _____ insureds' expenditures were made to recompense personal injury and wrongful death claims rather than property damage claims. While it is true, in a metaphysical sense, that any expenditure of funds from a party's estate can always be visualized as property damage, the term "property damage" as used in the 6 appellees' policies is a term of art.5 We agree with the district court that the term is not ambiguous and, fairly read, triggers coverage only when damage to property occurs during the __ ________ applicable policy period. See In Re Hotel Fire Litig., 802 F. ___ ________________________ Supp. at 645-46. Appellants also cite Chemstar, Inc. v. Liberty Mutual ______________ ______________ Ins. Co., 797 F. Supp. 1541 (C.D. Cal. 1992), as a basis for _________ urging that the dismissal of their coverage claims was premature. In particular, they brandish Chemstar's acknowledgement that ________ California courts have adopted more than one rule for ascertaining the date upon which property damage occurs. See id. ___ ___ at 1549. Arguing that the district court "did not have undisputed material facts allowing it to decide between the various trigger rules and to determine the proper application of the one that it chose," appellants maintain that summary judgment was inappropriate. Even assuming that California law supplies the rule of decision, see supra note 4, we disagree with appellants' ___ _____ characterization of the sufficiency of the factual exposition before the district court. Chemstar makes clear that under ________ California law "insurance policies are triggered when property damage actually occurs, rather than when some prior wrongful act is committed." Id. at 1548. Indeed, the Chemstar court embarked ___ ________ ____________________ 5This term is precisely defined in most of the policies and is satisfactorily defined by the structure of the one policy that does not contain an explicit definition. See In re Hotel Fire ___ ________________ Litig., 802 F. Supp. at 645-46. ______ 7 upon a discussion of various trigger rules merely because it observed that, in latent defect cases, the "date when property damage occurs is often difficult to pinpoint." Id. ___ In the case at bar, no such difficulty existed. The record makes manifest that none of the hotel's property contained the type of latent defect that would have set the stage for a complex determination of the date damage occurred. Bearing in mind the illogic of the proposition that products fit for ordinary use can be deemed defective at all, we are unable to conceive of any evidentiary proffer that could alter the obvious trigger date and appellants have not suggested, let alone documented, a viable scenario for such an alteration. Here, the damage indisputably occurred on the date of the fire, well after the expiration of the insurance policies underwritten by the appellees. Hence, coverage was triggered at a time when appellees were no longer on the risk. We need go no further. The supposed defects that were apparent in the Dupont Plaza Hotel before the fire and which allegedly contributed to the victims' injuries were not at all representative of the specie of "property damage" contemplated in the pre-fire insurers' policies. Because this is so, and because no insured loss took place during the policy period(s), the district court did not err in granting the pre-fire insurers' motion for brevis disposition. ______ Affirmed. Affirmed. ________ 8