989 F.2d 36
 61 USLW 2602
 In re SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION.
HOLDERS CAPITAL CORPORATION, et al., Cross-Claimants, Appellants,
v.
CALIFORNIA UNION INSURANCE COMPANY, et al.,
Cross-Defendants, Appellees.
 No. 92-2216.
 United States Court of Appeals,
First Circuit.
 Heard March 2, 1993.
Decided March 29, 1993.
 
 Gary L. Bostwick, with whom R. Lance Belsome was on brief, for cross-claimants, appellants.
 Ralph W. Dau and Andrew K. Epting, Jr., with whom Peter B. Ackerman, Jeffrey W. Kilduff, O'Melveny & Myers, Raul E. Gonzalez-Diaz, A.J. Bennazar-Zequeira, Gonzalez & Bennazar, G. Trenholm Walker, Wise & Cole, Homer L. Marlow, William G. Liston, Marlow, Shofi, Connelly, Velerius, Abrams, Lowe & Adler, Paul K. Connolly, Jr., Damian R. LaPlaca, LeBoeuf, Lamb, Leiby & MacRae, Deborah A. Pitts, Hancock, Rothert & Bunshoft, Lon Harris, Harris & Green, Bethany K. Culp, Patrick McCoy, Oppenheimer Wolff & Donnelly, Stuart W. Axe, Lester, Schwab, Katz & Dwyer, Francisco J. Colon-Pagan, Adrian Mercado, Mercado & Soto, Marcos Perez Cruz, Virgilio Mendez Cuesta, Ernesto Rodriguez-Suris, and Latimer, Biaggi, Rachid, Rodriguez-Suris & Godreau were on brief, for cross-defendants, appellees.
 Before SELYA and CYR, Circuit Judges, and FUSTE,* District Judge.
 SELYA, Circuit Judge.
 
 
 1
 We approach once more the lair of the fabled "litigatory monster," In re Recticel Foam Corp., 859 F.2d 1000, 1001 (1st Cir.1988), spawned by the deadly fire which engulfed the San Juan Dupont Plaza Hotel on December 31, 1986. In this appeal, three entities interested in the ownership and operation of the hotel contest the district court's entry of summary judgment in favor of a group of seventeen insurers (the pre-fire insurers) whose comprehensive general liability (CGL) and excess insurance policies had expired before the fire occurred.[1] Finding no error of law, we affirm.
 
 
 2
 We recently traced the six-year procedural history of this gargantuan litigation, see In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 982 F.2d 603, 605-08 (1st Cir.1992), and it would be pleonastic to repeat that exercise. We remind the reader, however, that the district court segmented the liability inquiry into three phases. See id. at 606. This appeal concerns the third, and final, phase--a phase designed to "determin[e] the contractual liability of various insurers." Id. at 606 n. 3.
 
 
 3
 The district court wrote a lengthy opinion that describes the mechanics of Phase III and we refer those who thirst for greater detail to that rescript. See In re San Juan Dupont Plaza Hotel Fire Litig., 802 F.Supp. 624, 629-30 (D.P.R.1992); see also id. at 652-57 (chronicling partial history of the insurance-related litigation). To put this appeal into workable perspective, it suffices to relate that, during Phase III, a covey of cross-claimants, comprising forty-eight entities who allegedly owned, operated, or managed the hotel, sought to recoup from the pre-fire insurers some $78,000,000 which the entities, collectively, had contributed to settlement of victims' claims. Finding an absence of coverage, the district court denied the cross-claimants' requests for indemnification. See id. at 651.
 
 
 4
 At this juncture, forty-five cross-claimants threw in the towel. The remaining three, Holders Capital Corporation, Hotel Systems International, and Dupont Plaza Associates, were arguably made of sterner stuff. They appealed, hawking the theorem that defects in the hotel, apparent before the ustulation, gave rise to the liability upon which the settlements were based; and that, therefore, these payments reflect "property damage" of a kind covered under the insuring agreements of the policies underwritten by the pre-fire insurers.[2]
 
 
 5
 We believe that appellants' theorem is utterly without merit. To say that damages for bodily injury and wrongful death are really "property damage" within the ambit of carefully written insurance policies, and then to argue that coverage attaches not when the harm-producing incident occurs but when alleged product defects first become visible, is to construct a pyramidal proposition more reminiscent of Lewis Carroll than of the lexicon of insurance law.[3] We cannot subscribe to so fanciful a reading of either the appellees' policies or the applicable precedents. And, moreover, because we find the district court's opinion on this point to be well-reasoned and clearly articulated, see id. at 643-48, we will be brief. Where, as here, a trial court has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear its own words resonate. We therefore affirm the entry of summary judgment in this case substantially on the basis of the opinion below, embellishing our affirmance with a decurtate explanation of why two recently decided cases, not considered by the district court, fail to tip the scales in appellants' favor.
 
 
 6
 Relying heavily on Eljer Mfg., Inc. v. Liberty Mutual Ins. Co., 972 F.2d 805 (7th Cir.1992), appellants argue that the district court applied an incorrect rule of law. Eljer involved defective plumbing systems that had been installed in homes throughout the United States. Citing policy language identical to that contained in several of the CGL policies here at issue, the manufacturer of the systems sought a declaration that it was covered for damages flowing from leaks occurring after its policies had lapsed. A divided panel of the Seventh Circuit upheld the insured's right to coverage on the basis that the "physical injury" took place when the systems were implanted not when the leakage occurred and the latent harm materialized. Id. at 814.
 
 
 7
 We refuse to accord Eljer controlling weight for a myriad of reasons. In the first place, the Eljer court decided the coverage issue under Illinois law, see id. at 806, in part through the use of what it termed "first principles." Id. at 812. To the extent that Eljer is good law in Illinois, a matter about which Judge Cudahy disagreed, see id. at 814-17 (Cudahy, J., dissenting), and upon which we do not opine, we have no occasion to transplant its holding to a case, like this one, which is governed by state law requiring a different result.[4] See, e.g., Albany Ins. Co. v. Compania de Desarrollo Comercial, 90 JTS 19 (P.R.1990); Maples v. Aetna Casualty & Sur. Co., 83 Cal.App.3d 641, 148 Cal.Rptr. 80 (1978).
 
 
 8
 In the second place, insofar as Eljer purports to claim nationwide application, we decline the invitation, whether proffered by appellants or by the Eljer majority, to supplant a state's body of contract law with "federal general common law." Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).
 
 
 9
 In the third place, Eljer 's rule of law evolved in connection with, and was applied to, a markedly different factual situation. The inherently defective plumbing system at issue there was installed in hundreds of thousands of homes nationwide. See Eljer, 972 F.2d at 807. It bore the risk of leaking, with a failure rate "sufficiently high to mark the product as defective," from the moment of installation, even when used as intended. Id. at 812. By contrast, the products found in the Dupont Plaza Hotel, although alleged to have created an unreasonable danger in this particular instance, were not generally defective. They functioned properly, with no risk of failure, upon normal use and became dangerous only upon the outbreak of the conflagration.
 
 
 10
 Fourth, and finally, the property damage caused by the defective plumbing systems was just that--property damage, e.g., claims for water damage to the victims' homes, diminution in property values, loss of use, costs of replacing the systems, etc. See id. at 807. Here, however, unlike in Eljer, the insureds' expenditures were made to recompense personal injury and wrongful death claims rather than property damage claims. While it is true, in a metaphysical sense, that any expenditure of funds from a party's estate can always be visualized as property damage, the term "property damage" as used in the appellees' policies is a term of art.[5] We agree with the district court that the term is not ambiguous and, fairly read, triggers coverage only when damage to property occurs during the applicable policy period. See In re Hotel Fire Litig., 802 F.Supp. at 645-46.
 
 
 11
 Appellants also cite Chemstar, Inc. v. Liberty Mutual Ins. Co., 797 F.Supp. 1541 (C.D.Cal.1992), as a basis for urging that the dismissal of their coverage claims was premature. In particular, they brandish Chemstar 's acknowledgement that California courts have adopted more than one rule for ascertaining the date upon which property damage occurs. See id. at 1549. Arguing that the district court "did not have undisputed material facts allowing it to decide between the various trigger rules and to determine the proper application of the one that it chose," appellants maintain that summary judgment was inappropriate.
 
 
 12
 Even assuming that California law supplies the rule of decision, see supra note 4, we disagree with appellants' characterization of the sufficiency of the factual exposition before the district court. Chemstar makes clear that under California law "insurance policies are triggered when property damage actually occurs, rather than when some prior wrongful act is committed." Id. at 1548. Indeed, the Chemstar court embarked upon a discussion of various trigger rules merely because it observed that, in latent defect cases, the "date when property damage occurs is often difficult to pinpoint." Id.
 
 
 13
 In the case at bar, no such difficulty existed. The record makes manifest that none of the hotel's property contained the type of latent defect that would have set the stage for a complex determination of the date damage occurred. Bearing in mind the illogic of the proposition that products fit for ordinary use can be deemed defective at all, we are unable to conceive of any evidentiary proffer that could alter the obvious trigger date--and appellants have not suggested, let alone documented, a viable scenario for such an alteration. Here, the damage indisputably occurred on the date of the fire, well after the expiration of the insurance policies underwritten by the appellees. Hence, coverage was triggered at a time when appellees were no longer on the risk.
 
 
 14
 We need go no further. The supposed defects that were apparent in the Dupont Plaza Hotel before the fire and which allegedly contributed to the victims' injuries were not at all representative of the specie of "property damage" contemplated in the pre-fire insurers' policies. Because this is so, and because no insured loss took place during the policy period(s), the district court did not err in granting the pre-fire insurers' motion for brevis disposition.
 
 
 15
 Affirmed.
 
 
 
 *
 Of the District of Puerto Rico, sitting by designation
 
 
 [1]
 The opinion below provides a complete list of the insurers in question. See In re San Juan Dupont Plaza Hotel Fire Litig., 802 F.Supp. 624, 628 n. 3 (D.P.R.1992)
 
 
 [2]
 Appellants chose to limit their appeal to the "property damage" theory, eschewing further pursuit of other contentions they originally espoused in the district court. Hence, we confine our comments to the single issue advanced on appeal, mindful that "theories neither briefed nor argued on appeal are deemed to have been waived." United States v. Slade, 980 F.2d 27, 30 n. 3 (1st Cir.1992)
 
 
 [3]
 One is reminded of Alice who, upon tumbling into the rabbit hole and finding the garden door locked, decided to solve her dilemma by eating a piece of cake. " 'Well, I'll eat it,' said Alice, 'and if it makes me grow larger, I can reach the key; and if it makes me grow smaller, I can creep under the door; so either way I'll get into the garden, and I don't care which happens!' " Lewis Carroll, Alice's Adventures In Wonderland 8-9 (Delacorte Press ed. 1966). Alice enjoyed her snack--but she remained the same size and the garden door remained inviolate. See id. at 9
 
 
 [4]
 The district court saw no need to make a choice of law as to whether the pre-fire insurers' policies were governed by Puerto Rico or California law. See In re Hotel Fire Litig., 802 F.Supp. at 637 n. 31. Because Puerto Rico law and California law coincide on the issue presented in this appeal, we, too, abjure such a choice. See Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1092 (1st Cir.1989) (recognizing that a court need not make a formal choice of law when nothing would turn on it)
 
 
 [5]
 This term is precisely defined in most of the policies and is satisfactorily defined by the structure of the one policy that does not contain an explicit definition. See In re Hotel Fire Litig., 802 F.Supp. at 645-46