Felix Ramos SANTOS, Petitioner,

v.

Felix Santos AMARO, et al., Respondents.

Civil No. 96–1181 (SEC).

United States District Court, D. Puerto Rico.

April 12, 1996.

Felix Ramos–Santos, Guayama, PR, Pro-se.

Department of Justice, Federal Litigation Division, San Juan, PR.

### OPINION AND ORDER

CASELLAS, District Judge.

Petitioner Felix Ramos Santos, a twenty-year old man convicted of first-degree murder in the courts of Puerto Rico, and currently confined within a Puerto Rico penitentiary,

has submitted a motion to proceed in forma pauperis in conjunction with his petition for the writ of habeas corpus, pursuant to 28 U.S.C. § 2254. In support of his petition he alleges that he was convicted after a trial in which the judge, Hon. Hiram Torres Rigual (a former Associate Justice of the Supreme Court of Puerto Rico), was more than seventy years old. Petitioner argues that his conviction was unconstitutional because under the Constitution of the Commonwealth of Puerto Rico, at Art. V § 10, the mandatory retirement age for judges is seventy, and therefore no verdict rendered by a judge older than sixty-nine years of age can be valid.

Upon close examination of the issues in this case and the applicable law, this Court **GRANTS** Mr. Ramos Santos' motion to proceed in forma pauperis **(Docket # 1)** and **DISMISSES** petitioner's writ. **(Docket # 2)**

## ANALYSIS

Pursuant to § 2254(b), a habeas corpus petitioner must exhaust all available state remedies before federal habeas jurisdiction attaches. *Scarpa v. Dubois,* 38 F.3d 1, 6 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 940, 130 L.Ed.2d 885 (1995). Petitioner Felix Ramos Santos has already exhausted the available state remedies, since he unsuccessfully appealed from the verdict to the Puerto Rico Supreme Court. Accordingly, his petition is not premature.

Petitioner filed this claim in the district court, pursuant to 28 U.S.C. § 2254. Such statute reads, in pertinent part:

> In any proceeding instituted in a Federal Court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit:

> (1) that the merits of the factual dispute were not resolved in the State court hearing;

> 2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing

> 3) that the material facts were not adequately developed at the State court hearing

> 4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

> \*  \*  \*  \*  \*  \*

> 7) that the applicant was **otherwise denied due process of law** in the State court proceeding; (emphasis added).

As noted above, petitioner hinges his § 2254 petition on section 2254(d)(7), as he argues that his conviction was unconstitutional because under the Constitution of the Commonwealth of Puerto Rico, at Art. V § 10, the mandatory retirement age for judges is seventy, and therefore no verdict rendered by a judge older than sixty-nine years of age can be valid. In other words, petitioner alleges that his conviction by a judge older than 70 constituted a deprivation of a constitutionally-protected, state-created property interest, in violation of the Due Process Clause of the Fourteenth Amendment.

### Petitioner's Fourteenth Amendment Due Process Claim

The Fourteenth Amendment of the United States Constitution forbids the state to deprive any person of life, liberty or property without due process of law. *Goss v. Lopez,* 419 U.S. 565, 572, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975). The jurisprudence has extended this protection to traditional forms of real, personal and intangible property as well as the right to certain government benefits. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Before the Court determines whether to apply the constitutional guarantee of procedural due process, it must first determine "the presence of a legitimate 'property' or 'liberty' interest within the meaning of the

Fifth or Fourteenth Amendment." *Arnett v. Kennedy,* 416 U.S. 134, 164, 94 S.Ct. 1633, 1649, 40 L.Ed.2d 15 (1974); *Board of Regents v. Roth,* 408 U.S. 564, 569–572, 92 S.Ct. 2701, 2705–2707, 33 L.Ed.2d 548 (1969). In *Board of Regents v. Roth,* the Court identified the sources of property interests: "Property interests ... are not created by the constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth* at 577, 92 S.Ct. at 2709.

▮ Once it is determined that due process applies, the question remains what process is due. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The First Circuit has noted that "[d]ue process, which may be said to mean fair procedure, is not a fixed or rigid concept, but, rather, is a flexible standard which varies depending upon the nature of the interest affected, and the circumstances of the deprivation." *Gorman v. University of Rhode Island,* 837 F.2d 7 (1st Cir.1988).

▮ The Court in *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), noted that notice and opportunity to be heard have traditionally and consistently been held to be the essential requisites of procedural due process. The Courts have stated that an opportunity to be heard requires that an individual be afforded "some kind of hearing." *Goss v. Lopez,* 419 U.S. at 579, 95 S.Ct. at 738–739. To determine whether due process has been denied, the courts have had to ascertain the scope of protection required in a particular setting, as well as an accommodation of the competing interests involved. *Mathews* at 335, 96 S.Ct. at 903. The three essential factors are: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; finally, the state interest, including the function involved and fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903.

▮ Upon careful consideration of petitioner's due process claim, this Court finds that petitioner lacks a state-created property interest pursuant to Article V, Section 10 of the Constitution of the Commonwealth of Puerto Rico, within the meaning of the Due Process Clause of the Fourteenth Amendment. Since petitioner Felix Ramos Santos has failed to establish a property interest, we need not inquire about "what process is due." *Morrissey v. Brewer,* 408 U.S. at 481, 92 S.Ct. at 2600.

The Puerto Rico Supreme Court, in its role as the highest arbiter of the meaning of the Constitution of Puerto Rico, considered and **rejected** petitioner's arguments, explicitly holding that Hon. Hiram Torres Rigual's verdict convicting Felix Ramos Santos was valid. *Pueblo v. Ramos Santos,* —— P.R.Dec. ——, 95 J.T.S. 94 (June 30, 1995). In its opinion, the Court held that the trial presided by Hon. Hiram Torres Rigual did not violate Art. V, § 10 of the Puerto Rico Constitution, pursuant to the doctrine of the *de facto* judge. Having determined the validity of Judge Torres Rigual's verdict, the Court did not directly rule on the constitutionality of the Special Judges law in light of Art. V. § 10 of the Constitution. The Court noted: "we have repeatedly held that we will not consider the constitutionality or unconstitutionality of a law unless its resolution is indispensable and we cannot solve the controversy before us for other reasons." *Pueblo v. Ramos Santos,* 95 J.T.S. 94 at 1054 (citing *Caguías Mendoza v. Asociación de Residentes de Mansiones de Río Piedras,* 93 J.T.S. 127.) (Translation ours) The Supreme Court of the United States has adopted a similar approach to its interpretation of the United States Constitution. *Ashwander v. TVA,* 297 U.S. 288, 346–347, 56 S.Ct. 466, 482–483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

Our determination that petitioner lacks a state-created property interest relies on the Court's interpretation of the *de facto* judge doctrine, as seen in the context of Article V, § 10 of the Puerto Rico Constitution. Accordingly, we proceed to examine the Su-

preme Court's findings in the case from which this appeal arises.

The Supreme Court indicated that, despite the mandatory retirement age of 70 for judges, encoded in Article V, § 10 of the Constitution of the Commonwealth of Puerto Rico, the *de facto* doctrine, as applied to judges, enabled Judge Hiram Torres Rigual to preside over Felix Ramos Santos' trial and issue a valid verdict against him. The Court then expounded on the *de facto* doctrine: "the *de facto* doctrine is a principle of law which imparts validity to the official acts of persons who, under color of authority, exercise lawfully existing offices, in which the public or third persons are interested, where the performance of such official acts is for the benefit of the public or third persons, and not for their own personal advantage. The necessity for this doctrine is manifest: it would be unreasonable to expect the public to inquire beforehand into the title of the officers with whom they propose to deal, in order to ascertain whether or not reliance may be placed on their assumed authority." *Pueblo v. Ramos Santos* 95 J.T.S. 94, at 1051 (citing *Fernandez v. District Court of Ponce,* 71 P.R.R. 149, 168 (1950)).

The Court also explained the three requisites which a person must fulfill before he or she can be considered a *de facto* officer. First, there must be a *de jure* office in order to have a *de facto* officer. Second, the *de facto* officer must be in actual possession and control of the office to the exclusion of the *de jure* officer. In other words, actual and physical possession of the office by one ready to act, as distinguished from the legal or technical possession that the *de jure* officer is considered to have. The third requisite is that the alleged *de facto* officer must be discharging his functions under color of authority. "By color of authority" meant the authority derived from an election or appointment, however irregular or informal, so that the incumbent not be a mere volunteer. Id. at 1053; *see also Fernandez v. District Court of Ponce,* 71 P.R.R. at 168–170.

The Supreme Court added two more requisites to those already stated in their earlier opinion in *Fernandez.* The fourth requisite was that the *de facto* officer must act under circumstances which normally and reasonably surround the *de jure* officer's functions. Finally, the *de facto* officers must convey an appearance to the public of legitimate title in the official performing governmental duties. *Pueblo v. Ramos Santos,* 95 J.T.S. 94 at 1053. (Translation ours)

The Supreme Court of Puerto Rico also elucidated the policy which bolstered the *de facto* doctrine. First, the *de facto* officer doctrine ensured the stability of governmental processes; second, it promoted administrative efficiency; third, it avoided litigation, duplicative efforts and needless expense; fourth, it enhanced finality and certainty in governmental actions; fifth, in the absence of the *de facto* doctrine, endless confusion would result because the past actions of the *de facto* officials would be subject to wholesale invalidation. Id. at 1052–1053. The Court added that without the *de facto* doctrine, collateral challenges could be used as a device for harassing public officials and obstructing their performance of governmental duties. Id. at 1052.

After its comprehensive discussion of the *de facto* doctrine, the Court determined that Judge Hiram Torres Rigual qualified as a *de facto* judge, and, accordingly, the verdict rendered by Judge Rigual was valid, and did not violate Art. V, § 10 of the Constitution of the Commonwealth of Puerto Rico. The Supreme Court of Puerto Rico determined that petitioner's constitutional claim did not proceed. In view of this decision, this Court finds that petitioner lacks a property interest with regards to Art. V, § 10 of the Puerto Rico Constitution. This Court simply cannot presume to instruct the Puerto Rico Supreme Court about how to interpret its own Constitution. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967) ("the State's highest court is the best authority on its own law.")

Having resolved petitioner's only asserted claim for relief, we need not tarry. As recently noted by the First Circuit, a court "should not wax longiloquent simply to hear its own words resonate." *In re San Juan Dupont Plaza Hotel Fire Litigation,* 989 F.2d 36, 38 (1st Cir.1993)

In view of the abovementioned discussion, the Court hereby **GRANTS** petitioner's motion to proceed in forma pauperis (**Docket # 1**) and **DISMISSES** plaintiff's § 2254 petition. (**Docket # 2**) Judgment shall soon follow accordingly.

**SO ORDERED.**