Jesus CASTRO, as Administrator
of the Estate of Juan Castro,
Deceased, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,
and Does 1 through 50, inclusive,
Defendants.

No. CV 93–1538 H (CM).

United States District Court,
S.D. California.

March 22, 1994.

Frank De Santis, San Diego, CA, for plaintiff, Jesus Castro.

Peter H. Klee, Charles A. Danaher, Luce, Forward, Hamilton & Scripps, San Diego, CA, for defendant Allstate Ins. Co.

ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

HUFF, District Judge.

## I. INTRODUCTION

Sometime prior to April 1989, Defendant Allstate Insurance Company issued a Deluxe Homeowner's Policy (the "Policy") to Carmelita Cook. The parties to this action agree that both Carmelita Cook and her son, Ariel Cook, were "Insured Persons" within the meaning of the Policy. On April 14, 1989, Ariel Cook killed Juan Castro in a "gang-style" shooting at a public recreation center. Ariel Cook was subsequently convicted of first degree murder.

On April 13, 1990, Plaintiff Jesus Castro, as administrator of his deceased son's estate, filed a wrongful death action against Carmelita Cook in state court. In sum, the complaint alleged Carmelita Cook's negligence in supervising Ariel Cook caused Juan Castro's death. Carmelita Cook tendered defense of the lawsuit to Allstate.

Defendant Allstate agreed to retain *Cumis* counsel for Ms. Cook, but declined to defend and/or indemnify her in the action. It did so based on 1) Section 533 of the California Insurance Code [1]; and 2) the "intentional act" and "criminal act" exclusions set forth in the Policy. The parties then settled the underlying lawsuit. Plaintiff received a stipulated judgment of $100,000 against Carmelita Cook and a complete assignment of Carmelita's rights against Defendant Allstate. In return, Carmelita Cook received a covenant that Plaintiff would not execute or record the judgment.

On September 16, 1993, Plaintiff—now as assignee of Carmelita Cook's rights—filed suit against Defendant Allstate in the Superior Court of the State of California. The complaint asserted two causes of action: 1) "Breach of Insurance Contract"; and 2) "Breach of the Covenant of Good Faith and Fair Dealing." On October 6, 1993, Defendant filed its notice of removal to this court.

---

1. Section 533 reads:
 An insurer is not liable for a lass caused by the wilful act of the insured but hi is not exonerated by the negligence of the insured or of the insured's agents or others.
 CAL.INS.CODE § 533 (West 1993).

Plaintiff and Defendant now bring cross-motions for summary judgment.

## II. DISCUSSION

Because Carmelita Cook had no reasonable expectation of coverage against Plaintiff's complaint in the underlying action, Allstate owed her no duty to defend. Accordingly, the court grants Defendant's and denies Plaintiff's motion for summary judgment.

### A. Standard

The California Supreme Court, in *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993), recently summarized the principles governing adjudication of the insurer's duty to defend its insured against a third party lawsuit:[2]

> [A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity.... Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded....
>
> ....
>
> The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy....
>
> ....
>
> Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor....

*Id.* at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (citations omitted).

### B. Application

Plaintiff moves for summary judgment that Allstate owed Carmelita Cook a duty to defend. Allstate moves for summary judgment that it owed no such duty.[3] The court addresses each motion concurrently by comparing the allegations of the underlying complaint with the terms of the Policy.

The underlying complaint alleges in relevant part:

> 19. At all times herein mentioned, Defendant Carmelita Cook negligently supervised the activity of her child Ariel Cook in that Defendant knew of the dangerous propensities and habits of said Ariel Cook but failed to exercise proper control or give appropriate warnings to prevent such conduct of Ariel Cook. Defendant had the ability to control the conduct of Ariel Cook but refused to do so and ignored her duty.
>
> 20. That as a result of such negligence, Ariel Cook continued to engage in dangerous and unlawful activities which ultimately resulted in his assault upon Decedent (Juan Castro), proximately causing the injuries herein complained of.

*Castro v. Lasaga, et al.*, Complaint, ¶¶ 19–20.

The Policy states in relevant part:

#### A. *Joint Obligations Provision*

The terms of this policy impose joint obligations on persons defined as an Insured Person. This means that the responsibilities, acts and failures to act of a person defined as an Insured Person will be binding upon another person defined as an Insured Person.

#### B. *Insuring Provision*

Losses We Cover:

Subject to the terms, limitations and conditions of this policy, Allstate will pay damages which an Insured Person becomes legally obligated to pay because of bodily injury or property damage arising from an accident covered by this part of the policy.

---

**2.** The court applies California law in this diversity of citizenship insurance case. *American States Ins. Co. v. Borbor*, 826 F.2d 888, 890 n. 2 (9th Cir.1987).

**3.** *See Montrose Chemical Corp. v. Superior Ct.*, 6 Cal.4th 287, 301, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993) (discussing procedural ramifications of motions for summary judgment in actions seeking declaration of existence or nonexistence of duty to defend).

### C. *Intentional Acts Exclusion*

We do not cover bodily injury or property damage resulting from:

(1) An act or omission intended or expected to cause bodily injury or property damage. This exclusion applies even if the bodily injury or property damage is of a different kind or degree, or is sustained by a different person or property than that intended or expected; or

(2) An act or omission committed by an Insured Person while insurance or while lacking the mental capacity to control his or her conduct while unable to form any intent to cause bodily injury or property damage. This exclusion applies only if a reasonable person would expect some bodily injury or property damage to result from the act or omission.

### D. *Criminal Acts Exclusion*

We do not cover bodily injury or property damage resulting from:

(1) A criminal act or omission; or

(2) An act or omission which is not criminal in nature and committed by an Insured Person who lacked the mental capacity to appreciate the criminal nature or wrongfulness of the act or omission or to conform his or her conduct to the requirements of the law or form the necessary intent under the law.

(3) This exclusion applies regardless of whether the insured person is actually charged with, or convicted of, a crime.

Stipulated Fact No. 12 (excerpt of relevant policy provisions).

The parties' cross-motions for summary judgment focus upon the same discrete issue: whether the criminal and/or intentional acts of Ariel Cook precluded coverage for Carmelita Cook's alleged negligence. In short, while both parties agree the Policy explicitly excludes coverage for criminal and/or inten-

tional acts, they differ as to the scope of that exclusion.

Allstate relies upon the Policy's "Joint Obligations" provision to argue Ariel Cook's criminal and/or intentional acts were "binding upon" Carmelita Cook and thus, precluded coverage for any claim against her arising out of the same criminal and/or intentional acts. Plaintiff makes two contrary arguments. First, he argues the criminal and intentional act exclusions are vague insofar as they do not clarify whose criminal or intentional acts are excluded from coverage.[4] Second, he argues the criminal act exclusion is vague because it refers, in part, to "the insured" as the person to whom "this exclusion applies."[5]

The court concludes the Policy's explicit exclusion of coverage for criminal and/or intentional acts, coupled with its "Joint Liability" provision, precluded coverage of claims asserted against Carmelita Cook in the underlying *Castro* lawsuit. While, "[i]t is a well established principle of insurance law that exclusionary clauses in insurance policies are to be construed strictly against the insurer," the court " 'may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid.' " *Allstate Ins. Co. v. Gilbert,* 852 F.2d 449, 454 (9th Cir.1988) (quoting *Safeco Ins. Co. v. Gilstrap,* 141 Cal.App.3d 524, 533, 190 Cal. Rptr. 425 (1983)).

Plaintiff first argues the criminal and intentional act exclusions are vague because they fail to clarify *whose* criminal or intentional acts are excluded from coverage. The court rejects that argument. Allstate's wholesale and unmodified exclusion of coverage for injury or damage arising out of *any* criminal or intentional act broadens rather than restricts the exclusion's scope. Allstate explicitly excludes coverage for criminal and/or intentional acts, period. In short, it is the very absence of qualification which clari-

---

4. Again, the Policy explicitly excludes coverage from injury or damage resulting from: (1) "An act or omission intended or expected to cause bodily injury or property damage"; or (2) "A criminal act or omission." Policy, §§ C, D.

5. Once again, the "Criminal Acts Exclusion" states in part:
   *This exclusion applies* regardless of whether *the insured person* is actually charged with, or convicted of, a crime.
   Policy, § D(3) (emphasis added).

fies rather than obscures the scope of the exclusion.

Though ultimately unsuccessful, Plaintiff's second argument is more persuasive. In sum, Plaintiff argues the criminal act exclusion is vague because it refers to "the insured" as the person to whom "this exclusion applies." *See* Policy, § D(3). In light of the Policy's explicit "Joint Obligations" provision, however, the court rejects Plaintiff's second argument as well.

As both parties recognize, the question confronted by courts when interpreting intentional/criminal acts exclusions in the context of an "innocent co-insured" is whether the obligations of insureds under the policy are joint or several. *See, e.g., Sales v. State Farm Fire & Cas. Co.,* 849 F.2d 1383, 1385 (11th Cir.1988) (whether innocent co-insured can recover under policy depends on whether obligations of insureds are joint or several); *Borbor,* 826 F.2d at 894. Courts have generally interpreted policies which exclude the criminal or intentional acts of "an" or "any" insured to clearly exclude coverage for an innocent co-insured. *See, e.g., Gilbert,* 852 F.2d at 454; *Allstate Ins. Co. v. Condon,* 198 Cal.App.3d 148, 243 Cal.Rptr. 623 (1988). On the other hand, courts have interpreted policies which exclude the criminal or intentional acts of "the" insured to *not* exclude coverage for an innocent insured. *See, e.g., Borbor,* 826 F.2d at 894.

The court declines to resort to semantic distinctions in the present case, however, because the Policy expressly imposes joint liability for the criminal acts of an insured; that is, such conduct precludes coverage of any other insured under the policy. As the *Borbor* court noted in interpreting an otherwise ambiguous criminal acts exclusion, "[h]ad [the insurer] intended that the wrongful act of *any* insured would void the policy, it could

have unambiguously drafted and included such language in the contract." *Id.* (emphasis in original). In drafting the Policy at issue, Allstate did just that. Namely, Allstate included a "Joint Obligations Provision" which explicitly imposes joint obligations on all "Insured Persons" under the Policy.[6] Because Carmelita Cook's alleged liability in the underlying *Castro* lawsuit arose out of the criminal and/or intentional acts of Ariel Cook—an "Insured Person" under the Policy—the court determines the Policy did not provide coverage as a matter of law.[7]

Because there was no potential for coverage, Allstate owed Carmelita Cook no duty to defend her against the *Castro* lawsuit. *See Gilbert,* 852 F.2d at 453–54 (no duty to defend where coverage precluded under intentional/criminal acts exclusion); *Allstate Ins. Co. v. Tankovich,* 776 F.Supp. 1394 (N.D.Cal. 1991) (same); *see generally Dykstra v. Foremost Ins. Co.,* 14 Cal.App.4th 361, 368, 17 Cal.Rptr.2d 543 (1993) ("where there is no potential for third party to recover on a covered claim, there is no duty to defend"). Therefore, Allstate neither breached the terms of the Policy nor the covenant of good faith and fair dealing in refusing to do so. Accordingly, the court grants Defendant's and denies Plaintiff's motion for summary judgment. *See State Farm Mut. Auto. Ins. Co. v. Davis,* 7 F.3d 180, 184 (9th Cir.1993).

## III. CONCLUSION

Because the allegations of the underlying complaint gave rise to no potential for coverage under the Policy, Allstate owed Carmelita Cook no duty to defend her against those allegations or the *Castro* lawsuit as a whole. In short, in light of the Policy's explicit coverage exclusions, Carmelita Cook had no reasonable expectation the Policy would provide

---

6. Once more, the "Joint Obligations Provision" reads:

The terms of this policy impose joint obligations on persons defined as an Insured Person. This means that the responsibilities, acts and failures to act of a person defined as an Insured Person will be binding upon another person defined as an Insured Person.
Policy, § A.

7. The court's conclusion is consistent with that reached by other courts considering the same coverage issue under the Allstate "Joint Obligations Provision." *See, e.g., Allstate Ins. Co. v. Childs,* No. 87–1055–Civ–ORL, 1988 U.S.Dist. LEXIS 18422, at *12–15 (M.D.Fla. July 7, 1988), *aff'd,* 873 F.2d 298 (11th Cir.1989) (Table, No. 89–3636); *Allstate Ins. Co. v. McCranie,* 716 F.Supp. 1440, 1448 (S.D.Fla.1989), *aff'd sub nom. Allstate Ins. Co. v. Manning,* 904 F.2d 713 (11th Cir.1990) (Table, No. 89–5672).

her coverage against a lawsuit arising out of her son's criminal homicide of another youth at a public recreation center. Accordingly, the court grants Defendant's and denies Plaintiff's motion for summary judgment.

IT IS SO ORDERED.