Ashley L. FARMER, a Minor, by and through her Guardian ad Litem, Andrea HANSEN, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, an Illinois Corporation, Defendant.

No. CV 03–05764–SVW.

United States District Court, C.D. California.

Feb. 5, 2004.

Luce, Forward, Hamilton & Scripps LLP by Peter H. Klee and Joseph E. Foss, San Diego, CA, for Defendant Allstate Insurance Company.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

WILSON, District Judge.

### I. Introduction

On August 14, 2003, Plaintiff Ashley L. Farmer ("Plaintiff"), by and through her Guardian ad Litem Andrea Hansen, brought this action for enforcement of a judgment pursuant to Cal. Ins.Code § 11580 and for breach of contract against Defendant Allstate Insurance Co. ("Defendant"). Plaintiff seeks damages against Defendant in the amount of $100,000, plus interest thereon, in satisfaction of a judgment rendered in an underlying lawsuit.[1]

Now before the Court are the parties' cross-motions for summary judgment, which each present the question whether as a matter of law Defendant had the duty to defend or indemnify its insured in an underlying lawsuit brought by Plaintiff.

### II. Background

#### A. *Facts* [2]

During the period of time relevant to this action, Nadine Varela ("Mrs. Varela")

---

1. Additionally, Plaintiff seeks costs of suit and attorneys' fees.

2. The facts relevant to this action are undisputed and are set forth in the Joint Statement of Undisputed Facts ("JSUF").

operated a state licensed child day care business out of the home in which lived with her husband Carlos Varela ("Mr. Varela"). At such time, the Varelas were insured under an Allstate Deluxe Home-owners Policy (the "Varela Policy"), which included an endorsement for home day care coverage.

Between September 1996 and August 1998, Mr. Varela sexually molested Plaintiff[3] on numerous occasions while she attended the day care service and was, thereby, in the care custody and control of Mrs. Varela. In September 1998, Mr. Varela was convicted under Cal.Penal Code § 288.5 and sentenced to six years in prison for sexually molesting Plaintiff.

On October 30, 1998, Andrea Hansen, on behalf of Plaintiff, filed a personal injury action in Los Angeles County Superior Court against Mrs. Varela, individually and dba Varela Family Care, and against Mr. Varela (the "underlying action"). The underlying action included causes of action for assault and battery against Mr. Varela and for intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and premise liability against both Mr. and Mrs. Varela. Among the allegations in the complaint was that the incidents of molestation occurred because Mrs. Varela negligently supervised Plaintiff.

Mrs. Varela subsequently tendered her defense of the underlying action to Defendant. In a letter dated December 29, 1998, Defendant informed Mrs. Varela of its decision not to defend or indemnify her in the underlying action because (1) there was no "occurrence" to trigger coverage; (2) coverage was barred by Cal. Ins.Code § 533[4]; (3) coverage was barred by the Varela Policy's intentional/criminal acts exclusion; and (4) coverage was barred by the Home Day Care Coverage Endorsement's exclusion for sexual molestation.

The underlying action proceeded to trial in April 2000. On April 26, 2000, the Superior Court rendered a Statement of Decision, setting forth its statement of factual findings and legal conclusions. The trial court found that Mr. Varela "touched [Plaintiff] in a sexually offensive manner, on no less than three occasions" and, therefore, that Mr. Varela had "sexually battered" Plaintiff. (JSUF, Ex. 4).

As to Mrs. Varela, the trial court's findings included a determination that "[a]t all times while [Plaintiff] was on the Premises, she was within the care, custody and control of Nadine Varela." (JSUF, Ex. 4). The trial court also found that Plaintiff "sustained physical and emotional injury while within the care, custody and control of Nadine Varela." (JSUF, Ex. 4). The trial court listed the "legal basis" for its decision as follows:

A. Nadine Varela negligently failed to use ordinary care or skill in the management of Ashley L. Farmer and as a result thereof, Ashley L. Farmer was injured.

B. Nadine Varela negligently permitted a dangerous condition to exist on her Premises and as a result thereof, Ashley L. Farmer was injured.

(JSUF, Ex. 4 at 2).

Accordingly, the trial court entered judgment for Plaintiff. Judgment was entered severally against Mr. Varela for $400,000, plus costs and post-judgment interest, and severally against Mrs. Varela

---

3. Plaintiff, who was born on February 22, 1988, was then between the age 8 and 10 years old.

4. § 533 states: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." Cal. Ins.Code § 533 (West 1993).

for $100,000 plus costs and post-judgment interest.

On January 15, 2003, Plaintiff obtained an assignment from Mrs. Varela of all her rights against Defendant under the Varela Policy. Plaintiff, through her Guardian ad Litem, then brought this action on August 14, 2003 to enforce the $100,000 judgment against Mrs. Varela, none of which amount has paid to date.

## B. *The Varela Policy*

The Varela Policy was issued by Defendant on or about May 17, 1996. Nadine Varela and Carlos Varela are named as the insured persons under the Varela Policy.

The Varela Policy provides that it covers an "insured person" for liability arising from an "occurrence":

> Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.

(JSUF, Ex. 2 at 27).

In turn, the Varela Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." (JSUF, Ex. 2 at 4).

In addition to offering the standard coverages of a homeowners' policy, the Varela Policy affords coverage to Mrs. Varela's day care business through its "Home Day Care Coverage Endorsement." The Endorsement extends coverage of the Varela Policy "to apply to the home day care business conducted by an insured person at the residence premises." (JSUF, Endorsement at 1). Pursuant to the Endorsement, the Varela Policy limit for Mrs.

Varela's home day care coverage is $100,000.

The Endorsement covers "bodily injury and property damage arising out of the operation of a home day care business by an inured person at the residence premises for which the insured person receives monetary or other compensation." (JSUF, Endorsement at 2). However, the Endorsement expressly precludes coverage for injury or damage arising out of sexual molestation, stating: "We do not cover bodily injury or property damage arising out of sexual molestation, corporal punishment or physical or mental abuse inflicted upon any person by or at the direction of an insured person, an employee of an insured person or any other person involved in any capacity in the home day care business." (JSUF, Endorsement at 2).

The Varela Policy contains three other provisions relevant to this action. First, the policy excludes coverage for intentional or criminal acts:

> We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person.... This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

(JSUF, Ex. 2 at 27).

Additionally, the Varela Policy contains a "Joint Obligations" provision: "The terms of this policy impose joint obligations on persons defined as an insured person. This means that the responsibilities, acts and failures to act of a person defined as insured person will be binding upon another person defined as an insured person." (JSUF, Ex. 2 at 5).

Finally, the Varela Policy obligates Defendant to defend a suit for covered dam-

ages: "We may investigate or settle any claim or suit for covered damages against an insured person. If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even in the allegations are groundless, false or fraudulent." (JSUF, Ex. 2 at 27).

### C. *Cross–Motions Before the Court*

Plaintiff states that the issue now before the Court is whether, in declining to defend Mrs. Varela in the underlying action and indemnify her for the judgment rendered against her, Defendant breached its contractual obligation to Mrs. Varela. In making this determination, Plaintiff states that the Court must answer three questions of law: (1) Whether the Varela Policy and the Home Day Care Coverage Endorsement (the "Endorsement") covered Mrs. Varela's negligent supervision of Plaintiff or the negligent allowance of a dangerous premises condition at issue in the underlying action; (2) Whether because of Defendant's refusal to defend Mrs. Varela in the underlying civil action, Defendant is bound by the factual determinations made by the trial court; and (3) Whether Plaintiff is entitled to judgment as a matter of law.

Defendant argues that Plaintiff's claims fail as a matter of law and that there was no potential for coverage for four reasons. First, because Mr. Varela's conduct was not an "accident," there was no injury-causing "occurrence" to trigger coverage. Second, the Varela Policy states where an insured person sexually molests someone, there is no coverage for any insured. Third, an intentional or criminal act by any insured bars coverage under the Varela Policy for all insureds. Fourth, the Varela Policy's "joint obligations" provision expressly imputes Mr. Varela's non-accidental, uncovered conduct to Mrs. Varela and, therefore, Mr. Varela's conduct precludes coverage for the actions of both Mr. and Mrs. Varela.

## III. Discussion

### A. *Legal Standard*

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tarin v. County of Los Angeles,* 123 F.3d 1259, 1263 (9th Cir.1997). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

That burden may be met by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See id.* at 324, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Only genuine disputes—where the evidence is such that a reasonable jury could return a verdict for the nonmoving party—over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir.2001) (the nonmoving party must offer specific evidence from which a reasonable jury could return a verdict in its favor).

### B. *Standing*

■ Plaintiff has standing to recover from Defendant both as an assignee of

Mrs. Varela's rights against Defendant and pursuant to Cal Ins.Code § 11580.

As noted, the parties do not dispute that on January 15, 2003, Plaintiff obtained an assignment from Mrs. Varela of all of her rights against Defendant under the Policy.

■ Further, Cal. Ins.Code § 11580 ("Required Policy Provisions") provides a right of an injured party to enforce a judgment against the tortfeasor's insurer. Specifically, insurance policies, such as the one at issue, that insure "[a]gainst loss or damage resulting from liability for injury suffered by another person" must contain a provide "that whenever judgment is secured against the insured ... in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." Cal. Ins.Code § 11580(a)(1), (b)(1).

### C. *Effect of the Underlying Action on the Instant Action*

Plaintiff argues vigorously that in determining whether Defendant was required to defend Mrs. Varela in the underlying action, the Court is bound by the state court's factual findings because Defendant had an opportunity to defend Mrs. Varela in the underlying action. Therefore, posits Plaintiff, Defendant is collaterally estopped from relitigating facts actually and impliedly determined by the Statement of Decision and encompassed within the state court's judgment even though Defendant was not a party to the underlying action.

Defendant does not dispute that it is precluded from relitigating factual issues decided by the state court in the underlying action. However, Defendant argues that it is not bound as to issues not necessarily adjudicated in the state court proceeding. In turn, because the coverage issue now before this Court was not litigated in the underlying action, Defendant contends that may assert coverage defenses in this action.

■ Just as Defendant does not dispute Plaintiff's contention that Defendant may not relitigate the state court's factual findings, so Plaintiff does not dispute that Defendant may assert its coverage defenses because coverage issues were not litigated in the underlying action. Ultimately then, the parties are in accord: the state court's necessary factual findings may not be relitigated, but because coverage was not at issue in the underlying action, Defendant may now present coverage defenses.

The caselaw on this matter is straightforward and supports the parties' position. The California Supreme Court has stated:

> An insurer that has been notified of an action and refuses to defend on the ground that the alleged claim is not within the policy coverage is bound by a judgment in the action, in the absence of fraud or collusion, as to all material findings of fact essential to the judgment of liability of the insured. The insurer is not bound, however, as to issues not necessarily adjudicated in the prior action and can still present any defenses not inconsistent with that judgment.

*Geddes & Smith, Inc. v. Saint Paul-Mercury Indemnity Co.*, 51 Cal.2d 558, 561–62, 334 P.2d 881 (1959). *See also Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 884, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978) ("An insurer who has an opportunity to defend is bound by the judgment against its insured as to all issues which were litigated in the action against the insured").

A recent California Court of Appeal case set forth the paradigm of case in which a judgment creditor is seeking to enforce a judgment a tortfeasor's insurer:

> Generally speaking, in an action by an injured party against the party who al-

legedly caused the injury the court does not adjudicate the issue of insurance coverage. The only questions litigated are the defendant's liability and the amount of damages. The plaintiff is not concerned with the theory of liability which produces victory; only with procuring the largest possible judgment. Similarly, the defendant is concerned only with avoiding, or at least minimizing, a judgment for the plaintiff. Whether the plaintiff's loss is covered by the defendant's insurance is not germane to the action, and evidence on that issues would be excluded as irrelevant. *Schaefer/Karpf Productions v. CNA Ins. Co.*, 64 Cal.App.4th 1306, 1313, 76 Cal. Rptr.2d 42 (1998).

The instant action fits squarely within this general model. The only issues that were necessarily adjudicated in the underlying action pertained to the Varelas' liability for Plaintiff's injuries. There is no indication that the state court considered whether the Policy afforded coverage to Mrs. Varela. Even if coverage issues were presented in the underlying action, Plaintiff has made no showing, as she must, that the state court made any determinations regarding such issues. *Id.* at 1314, 76 Cal.Rptr.2d 42.

Thus, the factual findings underpinning the state court's judgment for Plaintiff are binding on this Court and may not be relitigated by Defendant. Of particular importance are the state court's findings that Mr. Varela sexually molested Plaintiff and that Mrs. Varela negligently allowed such molestation to occur. Conversely, Defendant may assert its coverage defenses in that the issue of coverage was not adjudicated in the underlying action.

### D. *Coverage*

#### 1. *The Duty to Defend*

Under a liability insurance policy, an "insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Insurance Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993). In the seminal case of *Gray v. Zurich Insurance Co.*, the California Supreme Court stated, "the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy." 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (emphasis in original). Conversely, "where there is no possibility of coverage, there is no duty to defend." *State Farm Fire and Casualty Co. v. The Superior Court of Orange County*, 191 Cal. App.3d 74, 77, 236 Cal.Rptr. 216.

■ Because the duty to defend is broader than the duty to indemnify, whether damages are ultimately awarded does not impact on the insurer's duty to defend. *See Horace Mann Ins. Co.*, 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 ("[A]n insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded). As the *Gray* court explained, if an insured party was "required to finance his own defense and then, only if successful, hold the insurer to its promise by means of a second suit for reimbursement, we defeat the basic reason for the purchase of the insurance." *Gray* 65 Cal.2d at 278, 54 Cal.Rptr. 104, 419 P.2d 168. Such a model would defeat the insured's expectation to be "supported by the resources and expertise of his insurer" and "to avoid the time, uncertainty and capital outlay in finding and retaining an attorney of his own." *Id.* at 278, 54 Cal.Rptr. 104, 419 P.2d 168.

■■ In California, whether an insurer owes a duty to defend is determined by first looking to the allegations of the underlying complaint and comparing them with the terms of the policy. *Horace Mann Ins. Co.*, 4 Cal.4th at 1081, 17 Cal. Rptr.2d 210, 846 P.2d 792. If the alleged

injuries against the claimant by the insured are within the terms of the policy, then the duty to defend attaches regardless of the insurer's determination that the suit is without merit. *Wausau Underwriters Ins. Co. v. Unigard Sec. Ins. Co.,* 68 Cal.App.4th 1030, 1045, 80 Cal.Rptr.2d 688 (1998).

■■ Even if the complaint does not allege injuries that fall within the terms of the policy, the duty to defend may still arise if facts extrinsic to the complaint "reveal a possibility that the claim may be covered by the policy." *Horace Mann Ins. Co.* 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792. Thus, the duty to defend arises when, based on the allegations of the complaint or on extrinsic facts "known by the insurer at the inception of a third party lawsuit," a suit *potentially* seeks damages within the coverage of the policy. *Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 295, 24 Cal. Rptr.2d 467, 861 P.2d 1153 (1993) (quoting *Saylin v. California Ins. Guarantee Assn.,* 179 Cal.App.3d 256, 263, 224 Cal.Rptr. 493). Indeed, "[t]he scope of the duty does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the *alleged facts or known extrinsic facts* reveal a *possibility* that the claim may be covered by the policy." *Atlantic Mutual Ins. Co. v. J. Lamb. Inc.* 100 Cal.App.4th 1017, 1034, 123 Cal.Rptr.2d 256 (2002) (emphasis in original). Additionally, doubts as to whether the duty to defend exists must be resolved in the insured's favor. *Horace Mann Ins. Co.,* 4 Cal.4th. at 1081, 17 Cal. Rptr.2d 210, 846 P.2d 792.

■ Ultimately then, the insurer faces a substantial task in justifying its refusal to defend the insured: "An insurer has no duty [to defend] only if, at the time of its decision, it can prove that the claim cannot fall within policy coverage." *National*

*Steel Corp. v. Golden Eagle Ins. Co.* (9th Cir.1997) 121 F.3d 496, 499.

### 2. *Whether Coverage was Triggered*

As stated above, the Varela Policy covers an "insured person" for liability arising out of an "occurrence." In turn, an "occurrence" is defined as "an accident ... resulting in bodily injury or property damage." Therefore, if the conduct of both Mr. Varela or Mrs. Varela is not an "accident," then coverage under the Varela Policy was not triggered, and Defendant has no duty to indemnify Plaintiff.

■ Defendant correctly argues, and Plaintiff concedes, that Mr. Varela's conduct was not an "occurrence" because child molestation cannot be an "accident." The California Supreme Court has stated that "child molestation is *always* intentional." *J.C. Penney Cas. Ins. Co. v. M.K.,* 52 Cal.3d 1009, 1025, 278 Cal.Rptr. 64, 804 P.2d 689 (1991) (emphasis in original). Numerous California courts have held that an intentional act cannot be characterized as an "accident." *See e.g., Quan v. Truck Ins. Exchange,* 67 Cal.App.4th 583, 79 Cal. Rptr.2d 134 (holding that an intentional act is not an accident even if it causes unintended harm); *Collin v. American Empire Ins. Co.,* 21 Cal.App.4th 787, 806, 26 Cal. Rptr.2d 391 (1994) ("It is fundamental that allegations of intentional wrongdoing do not allege an 'accident.'"); *Merced Mutual Ins. Co. v. Mendez,* 213 Cal.App.3d 41, 50, 261 Cal.Rptr. 273 (1989) ("An accident... is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage."); *Royal Globe Ins. Co. v. Whitaker,* 181 Cal.App.3d 532, 537, 226 Cal.Rptr. 435 (1986) ("An intentional act is not an 'accident' within the plain meaning of the word."). Accordingly, because Mr. Varela's conduct was not an "occurrence,"

his conduct could not trigger the Varela Policy's coverage.

Thus, in order for coverage to be triggered, Mrs. Varela's conduct must have constituted an "accident." Defendant argues that where, as here, negligent conduct is not the immediate cause of the injuries giving rise to liability, but rather merely created the potential for such injuries, the negligent conduct is not a covered "accident."

In support of this contention, Defendant relies chiefly on *American Empire Surplus Lines Ins. Co. v. Bay Area Cab Lease, Inc.,* 756 F.Supp. 1287 (N.D.Cal. 1991). In *American Empire,* a cab company was sued for negligent hiring and supervision after one of its employees sexually molested a child. The insurer defended the underlying action subject to a reservation of rights and brought a declaratory action in federal court seeking a determination of its duty to defend. The district court ruled in favor of the insurance company on three grounds, one of which being that "[n]egligent hiring/supervision is not an 'accident.'" *Id.* at 1289. The cab company's alleged negligent hiring of the malfeasant employee "merely created the potential for injury to [the child] but was not itself the cause of the injury." *Id.* at 1290.

The *American Empire* court based this conclusion on language from two California Court of Appeal cases. In *Maples v. Aetna Cas. & Sur. Co.,* 83 Cal.App.3d 641, 647–48, 148 Cal.Rptr. 80 (1978), the court based its ruling on an "unbroken line of authority finding that the term 'accident' umambiguously refers to the event causing damage, not the earlier event creating the potential for future injury." Notably, however, *Maples* and the cases upon which the *Maples* court relied involved the question of when an "accident" occurred. For instance in *Maples,* the plaintiff sought a declaration that he was covered by his insurance policy for a fire occurring after

termination of the policy but on account of the boiler installation work done during the policy period. As the above-quoted language indicates, the court held that the fire attributed to the negligent installation was an "accident" but that the negligent installation itself was not an "accident."

*American Empire* also cites *State Farm Mut. Auto. Ins. Co. v. Longden,* 197 Cal. App.3d 226, 242 Cal.Rptr. 726 (1987) in support of its holding negligent hiring and supervision is not an "accident." Like *Maples, Longden* addressed the temporal definition of "accident." In *Longden,* the insured sought to have the insurer defend him against claims arising out of a car collision occurring after the expiration of the insurance policy where the collision was caused by the insured's negligent maintenance of brakes within the period of coverage. The *Longden* court, "adopt[ing] the widely accepted rule [set forth in *Maples* ] for determining the time of the accident as the time when the 'complaining party was actually injured,'" ruled that the "accident causing Longden's injuries occurred outside the policy period." *Id.* at 231, 232, 242 Cal.Rptr. 726.

Though Plaintiff almost completely ignored this issue in its briefs, it is clear that there exists contrary authority. In *Westfield Ins. Co. v. TWT, Inc.,* 723 F.Supp. 492 (N.D.Cal.1989), the insurer sought a declaration that it was not obligated to defend and indemnify the insured in an underlying lawsuit arising from the insured's dealings with a failed financial savings and loan institution. As in the case now before the Court, the policy in *TWT* required an "occurrence," which was defined as an "accident ... which results in bodily injury or property damage." *Id.* at 494. The *TWT* court held that the claim against the insured for negligent supervision came within the policy, explaining: "Some of the claims against defendants arise from acts that are not necessarily

intentional. Some allegations against defendants involve negligence, not intentional wrongdoing.... Negligent supervision could constitute an 'occurrence' under the policy language." *Id.* at 495. *See also Fireman's Fund Ins. Co. v. National Bank for Cooperatives,* 849 F.Supp. 1347, 1367–68 (N.D.Cal.1994) (Where arbitration award against insured was for negligent supervision as well as intentional conduct, coverage was triggered because insured's negligent supervision of employees who made false or misleading statements found to constitute an "accident" within the meaning of "occurrence"); *Keating v. National Union Fire Ins. Co.,* 754 F.Supp. 1431, 1439–40 (C.D.Cal.1990) *rev'd on other grounds* 995 F.2d 154 (9th Cir.1993) (Where "occurrence" was synonymous with "accident," court held that insureds' negligently allowing others to make false or misleading statements was an occurrence even if insureds themselves also made false statements).[5]

The Court is inclined to find that Mrs. Varela's negligent supervision does not qualify as an "occurrence." Although the context of *Maples* and *Longden* is clearly distinguishable from this case, the analysis of an "accident" set forth in those cases seems applicable here. In *Maples,* the court was faced with determining whether the negligent conduct that created the potential for the injury causing event should be deemed an "accident." The *Maples* court presumably could have found that both the negligent heater installation and the fire itself were "accidents" (and thus "occurrences"), but instead it found that only the event causing the injury was the "accident." In the instant case, the injury causing events were clearly Mr. Varela's molestations of Plaintiff—without such behavior, Plaintiff would not have brought

the underlying action against the Varelas. In that Mrs. Varela's negligence enabled Mr. Varela to molest Plaintiff, Mrs. Varela's conduct only created the potential for Plaintiff's injuries. That the *Maples* court's task was to determine whether negligent behavior was an "accident" for purposes of determining whether an "accident" occurred within a policy's coverage period and that this Court's task is to determine whether negligent behavior was an "accident" for purposes of determining whether coverage was triggered is irrelevant. Like the *Maples* court, this Court simply must determine whether antecedent negligent conduct constitutes an "accident."

While the Court feels that Mrs. Varela's negligent conduct is not an "occurrence" as defined in the Varela Policy, the Court need not decide this issue because other provisions of the Varela Policy unequivocally preclude coverage. Therefore, the Court assumes, without deciding, that Mrs. Varela's conduct was an "occurrence" within the meaning of the Varela Policy.

### 3. *Exclusions for Sexual Molestation and Intentional or Criminal Acts*

▉▉▉▉ Defendant argues that the Varela Policy's Sexual Molestation Exclusion and its Intentional or Criminal Acts Exclusion each preclude coverage for Mrs. Varela's conduct and, thus, the judgment rendered against her in the underlying action. Because these exclusions contain similar operative language, they are considered together. Once again, the Sexual Molestation Exclusion states: "We do not cover bodily injury or property damage arising out of sexual molestation ... inflicted upon any person by or at the direction of *an insured person,* an employee of an insured person or any other person

---

5. Notably, the cases cited above that found negligent supervision to be an "occurrence" did not cite *Maples* or *Longden.*

involved in any capacity in the home day care business." (JSUF, Endorsement at 2) (emphasis added). Similarly, in relevant part, the Intentional or Criminal Acts Exclusion states:"We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal act or omissions of *any insured person.*" (JSUF, Ex. 2 at 27) (emphasis added).

First, Defendant contends that because the Sexual Molestation Exclusion bars coverage for any injuries "arising out of sexual molestation," the plain language of this exclusion exonerates Defendant. Although Mrs. Varela's negligent conduct enabled Mr. Varela to molest Plaintiff, Plaintiff's injuries "ar[ose] out of sexual molestation." In other words, Defendant is arguing that Mrs. Varela's conduct itself did not injure Plaintiff and, therefore, no injuries exist apart from those arising out of Mr. Varela's molestation. In turn, because any injuries arising out of sexual molestation are excluded from coverage, Plaintiff did not suffer any injuries that fall within the scope of the Varela Policy.

Defendant makes a similar argument with regard to the Intentional or Criminal Acts Exclusion. Given that Mr. Varela's conduct was both intentional and criminal, this exclusion clearly precludes coverage for Mr. Varela's conduct. Defendant posits that because the Intentional or Criminal Acts Exclusion bars coverage for injury intended by or reasonably expected to result from the intentional or criminal act of *any insured*, Mr. Varela's behavior precludes coverage for the negligent conduct of Mrs. Varela. According to Defendant, Plaintiff's injuries were intended by, or at least could be reasonably expected to re-

sult from, Mr. Varela's acts of sexual molestation. Therefore, such injuries could not fall within the scope of the Varela Policy's coverage regardless Mrs. Varela's negligent conduct.

In contrast, Plaintiff argues that neither of these exclusions applies to Mrs. Varela's conduct. Plaintiff emphasizes that Mrs. Varela did not sexually molest Plaintiff nor did she commit any intentional or criminal acts. In that Plaintiff's injuries are attributable to Mrs. Varela's negligence, Plaintiff asserts that Mr. Varela's conduct is irrelevant and that coverage attaches.

Numerous cases have addressed the coverage issue herein presented in the context of an exclusion for intentional or criminal acts or other similar exclusions. *Allstate Ins. Co. v. Gilbert*, 852 F.2d 449 (9th Cir. 1988), is particularly apt. In *Gilbert*, Albert and Margaret Gilbert appealed from a district court's order granting summary judgment in favor of Allstate Insurance Co. on Allstate's declaratory relief action seeking a determination that it had no duty to defend or indemnify the Gilberts under a homeowner's insurance policy. The relevant facts are as follows. After Mr. Gilbert was convicted of sexually molesting Jennifer Stangle, a child under fourteen years of age, Stangle and her parents filed a civil action against both Mr. and Mrs. Gilbert. As to Mrs. Gilbert, the complaint alleged that she negligently cared for and supervised Stangle and that she was negligent in failing to take steps to prevent Mr. Gilbert's acts of sexual molestation. Allstate refused to defend or indemnify the Gilberts on account of an exclusion that expressly excluded coverage for injuries intentionally caused by "an insured person."[6] *Id.* at 450–51.

---

**6.** During the relevant period, the Gilberts were insured under two successive homeowner's insurance policies. The first policy excluded coverage for "[b]odily injury or property damage intentionally caused by an

insured person." *Gilbert,* 852 F.2d at 450. The second policy contained an exclusion for intentional or criminal acts almost identical to that in the Varela's policy. It excluded:

The *Gilbert* court affirmed district court's finding that the claims against Mrs. Gilbert resulted from intentional acts by "an insured" under the policy (Mr. Gilbert) and, therefore, that the insurer had no duty to defend or indemnify Mrs. Gilbert. The court stated:

> We hold that by excluding insurance coverage for injury of damage intentionally caused by "an insured person," Allstate unambiguously excluded coverage for damages caused by the intentional wrongful acts of *any* insured under the policies. The [underlying] complaint seeks to recover damages for injuries intentionally caused by Albert Gilbert, "an insured person" under the policies. Coverage for these injuries is thus precluded whether compensation is sought from Albert or Margaret.

*Id.* at 454. (emphasis in original). *See also Boon v. Allstate Ins. Co.*, 2003 WL 21664170 *5 (Where homeowner's insurance policy has an exclusion for intentional or criminal acts, "the criminal acts of one insured will exclude coverage for any insured."); *Zelda, Inc. v. Northland Ins. Co.*, 56 Cal.App.4th 1252, 1263, 66 Cal. Rptr.2d 356 (1997) (Assault and battery exclusion precluded coverage for claims of negligent hiring and supervision against owners of a restaurant where bartender had physically assaulted plaintiff in underlying action); *Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.*, 42 Cal.App.4th 121, 49 Cal. Rptr.2d 567 (Acts of negligence alleged by injured plaintiffs in the underlying action that were based on assault and battery were precluded from coverage where policy excluded from coverage injuries arising out of assault and battery); *Fire Ins. Exchange v. Altieri*, 235 Cal.App.3d 1352, 1361, 1 Cal.Rptr.2d 360 (1991) ("[W]here

as here, the policy excludes coverage for bodily injury intended or expected by "an" or "any" insured, the cases have uniformly denied coverage for all claims, including negligent supervision claims.").

These cases dictate that the Court must find that both the Sexual Molestation Exclusion and the Intentional or Criminal Acts Exclusion preclude coverage for Mrs. Varela. Paralleling *Gilbert*, Mr. Varela's intentional criminal act gave rise to the negligence claims against Mrs. Varela—that is, no negligence claims would have been brought against Mrs. Varela if Mr. Varela had not molested Plaintiff. Moreover, as in *Gilbert*, the exclusions at issue apply to the conduct of "an insured" or "any insured." Thus, given the Varela Policy's language and the nature of both Plaintiff's injuries and the Varelas' respective conduct, it is clear that coverage is excluded.

Accordingly, Plaintiff's heavy reliance on *National Union Fire Ins. Co. v. Lynette C.*, 228 Cal.App.3d 1073, 279 Cal.Rptr. 394 (1991), is misplaced. Like the instant case, in *Lynette C.*, a sexually abused child, who had obtained a judgment for acts of negligence leading to her sexual molestation, sought to enforce that judgment against the insured's insurer. Lynette, the abused child, was sexually molested by her foster father Duane Lopes. After Mr. Lopes pleaded guilty to such actions, Lynette sued Mr. Lopes and his wife Debra Lopes. As to Mrs. Lopes, Lynette alleged that she was negligent in allowing Lynette's placement in Lopes' foster home because Mrs. Lopes knew, or should have known, that Mr. Lopes had a propensity to sexually molest children, and, further, that Mrs. Lopes was negligent in not protecting Lynette from Mr. Lopes' molestations. The court in the underlying lawsuit found

---

"Bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person." *Id.* at 450–51.

that Mrs. Lopes' negligent conduct was "'a concurring legal cause of harm' to Lynette," and rendered judgment against the Lopes' jointly and severally in the amount of $1,250,000. *Id.* at 1076, 279 Cal. Rptr. 394.

While the facts of *Lynette C.* are nearly identical to the facts of the case now before the court, the language of the insurance policy in *Lynette C.* dispositively differs from the language in the Varela's policy. The policy in *Lynette C.* contained two applicable exclusions. Exclusion (b) of the policy specified that the policy did not apply "to any dishonest fraudulent, criminal or malicious act, error or omission of an Insured." *Id.* at 1077, 279 Cal.Rptr. 394. Exclusion (1) stated that the policy is inapplicable:

> to licentious, immoral, or sexual behavior intended to lead to or culminating in any sexual act. However, notwithstanding the foregoing, *the Insured* shall be protected under the terms of this policy as to any claim upon which suit may be brought against him, by reason of any alleged licentious, immoral or sexual behavior by *an Insured* unless a judgment or final adjudication thereof adverse to *the Insured* shall establish that acts of active or deliberate, licentious, immoral or sexual behavior committed by *the Insured* with actual licentious or immoral purpose and intent were material to the cause of action so adjudicated.

*Id.*

The court, in finding that Mrs. Lopes was entitled to indemnification, relied on Exclusion (1): "Undoubtedly, exclusion (1)'s exception, in isolation, can reasonably be read to protect one insured against claims based on a second insured's sexual conduct so long as the first insured has not engaged directly in that conduct." *Id.* at 1079, 279 Cal.Rptr. 394. In arriving at this conclusion, the court agreed with Lynette's interpretation of Exclusion (1), which

emphasized both the distinction between "the Insured" and "an Insured" and the well-established principle of policy interpretation that a policy provision should not be read in a manner that renders it meaningless. The court noted that an abundance of caselaw supported Lynette's contention that "'the Insured' refers to a particular insured and that 'an Insured' refers to any insured under the policy." *Id.* Furthermore, given Exclusion (b)'s exclusion for criminal acts, the only plausible way that second sentence of Exclusion (1) would not be rendered meaningless would be to interpret it as overriding Exclusion (b) in "preserv[ing] protection to one insured from claims based upon the sexual behavior of another insured." *Id.* at 1078, 279 Cal.Rptr. 394.

The court recognized that its interpretation of Exclusion (1) may have created "an ambiguity" when read in light of the policy as a whole and Exclusion (b) in particular, but found that "under settled principles of insurance contract interpretation that ambiguity must be construed against [the insurer]." *Id.* at 1079, 279 Cal.Rptr. 394. Thus, held the court, "the exception set forth in exclusion (1) ... either reasonably provides coverage for Debra or, at a minimum, creates an ambiguity in favor of coverage for Debra." *Id.*

In so holding, the *Lynette C.* court distinguished *Gilbert* on the ground that the relevant insurance policy in *Gilbert* did not contain language analogous to that found in Exclusion (1) of the policy at issue in *Lynette C.* Likewise, *Lynette C.* is inapplicable to the case at bar because the Varela Policy does not contain a provision similar to Exclusion (1). Rather, similar to *Gilbert*, the Varela Policy expressly excludes coverage for any intentional or criminal act of "any insured." Additionally, the Varela Policy excludes coverage for any injury arising out of acts of sexual molestation by "an insured."

Therefore, *Gilbert* is the controlling authority, and *Lynette C.* is inapposite. As a matter of law, both the Sexual Molestation Exclusion and the Intentional or Criminal Acts Exclusion preclude coverage for Mrs. Varela.

### 4. *"Joint Obligations" Provision*

 Defendant further argues that even if the Sexual Molestation Exclusion and the Intentional or Criminal Acts Exclusion do not preclude coverage for Mrs. Varela, then the Policy's "Joint Obligations" provision does so. Once again, the Joint Obligations provision states: "The terms of this policy impose joint obligations on persons defined as an insured person. This means that the responsibilities, acts and failures to act of a person defined as insured person will be binding upon another person defined as an insured person." (JSUF, Ex. 2 at 5).

*Castro v. Allstate Ins. Co.*, 855 F.Supp. 1152 (S.D.Cal.1994), is instructive on this issue. In *Castro,* the administrator of the decedent's estate brought suit against Allstate, seeking to enforce a stipulated judgment in an underlying lawsuit. The underlying lawsuit was a wrongful death action by Jesus Castro, as administrator of the estate of Juan Castro, against Carmelita Cook, whose son Ariel Cook had killed the decedent in a gang-style shooting. The complaint alleged that Mrs. Cook's negligent supervision of her son had caused the decedent's death.

Though at the time of the killing, Ariel Cook and his mother Carmelita were insured under a homeowner's policy issued by Allstate, Allstate refused to defend or indemnify. Thus, after Castro received a stipulated judgment of $100,000 against Mrs. Cook, he obtained a complete assignment of Mrs. Cook's rights against Allstate and brought suit to enforce the judgment pursuant to such rights.

In determining whether Allstate owed Mrs. Cook a duty to defend, the district court focused on the Joint Obligations provision in the Cooks' policy, which contained identical language to the Joint Obligations provision in the Varelas' policy. The district court interpreted the Joint Obligations provision, in light of the policy's criminal acts exclusion, as "expressly impos[ing] joint liability for the criminal acts of an insured; that is, such conduct precludes coverage of any other insured under the policy." *Id.* at 1155. The court then held that Allstate did not owe Mrs. Cook a duty to defend because there was no potential for coverage: "Because Carmelita Cook's alleged liability in the underlying *Castro* lawsuit arose out of the criminal and/or intentional acts of Ariel Cook—an "Insured Person" under the Policy—the court determines the Policy did not provide coverage as a matter of law." *Id.*

Here, Plaintiff concedes that Mr. Varela's conduct is excluded from coverage under the Policy by virtue of the Sexual Molestation Exclusion and the Intentional or Criminal Acts Exclusion. In that the plain language of the Joint Obligations provision imputes Mr. Varela's conduct to Mrs. Varela, Mrs. Varela is also barred from coverage under the Policy on account of these exclusions.

## IV. Conclusion

For the reasons set forth in this order, the Court finds as a matter of law that Defendant had no duty to defend, and thus has no duty to indemnify, Nadine Varela. Therefore, the Court GRANTS Defendant's Motion for Summary Judgment [17] and DENIES Plaintiff's Motion for Summary Judgment [21].

IT IS SO ORDERED.